[Crim. No. 12357. First Dist., Div. One. Jan. 20, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY J. HOPKINS, Defendant and Appellant.

COUNSEL

R. Samuel Coon, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ELKINGTON, J.—Following his jury waiver, defendant Terry J. Hopkins was found guilty by the trial court of the following offenses:

Count one: Burglary first degree (Pen. Code, §§ 459, 460, subd. 2) with intentional great bodily injury (Pen. Code, § 461);

Count two: Robbery first degree (Pen. Code, §§ 211, 211a) with intentional great bodily injury (Pen. Code, § 213);

Count three: Malicious injury to telephone equipment (Pen. Code, § 591); and

Count four: Assault with force likely to do great bodily harm (Pen. Code, § 245, subd. (a)).

The judgment which was thereafter entered provided that the sentence on each of the charges was to run concurrently with the sentences on the others.

The appeal is from the judgment.

The evidence disclosed that Hopkins and some person unknown forced open the apartment door of Mrs. Turner, 89 years of age, demanding money and liquor. During the course of the next hour the two men knocked the lady over, kicked her, jabbed her repeatedly with a sharp fork, choked her and kept hitting her in the face. While one of the men held her arms behind her back, the other punched her, breaking her shoulder. She testified that while holding her on a chesterfield one of the men "hit me on one side of my head and knocked me over this way, then he would come back with the other and hit me that way." When the men were finally told where Mrs. Turner's money was, they emptied her purse of its contents. Before the men left they tied her with a telephone cord which had been yanked from the wall. And as a final gesture, one of the men, after "that salami" had been taken out of the refrigerator, "just hit [Mrs. Turner] in the face with that salami and went out."

Later on the day of the crimes we have described, Hopkins, a veteran with some sort of alcoholic problem, presented himself at a Veterans Administration Hospital in Palo Alto, and asked to see a psychiatrist. Upon being shown to a psychiatrist, Hopkins testified: "[B]efore I told

him my problem I asked him for—if everything I tell would be confidential, and he said it would be." Hopkins then told of his participation in the crimes in Mrs. Turner's apartment, while the doctor made notes. The psychiatrist, according to Hopkins, then "called a taxi for me and gave me my records and sent me to . . . the Menlo Park branch" of the hospital. At Menlo Park, Hopkins repeated the story to two nurses, one of whom relayed the information to "security," which in turn notified the police. It was this information which led to Hopkins' arrest, and his confession which was relied upon in part at the trial.

I. ■ Hopkins' first contention is that the "motion to suppress his confession pursuant to Evidence Code section 1014 [was] wrongfully denied."

Evidence Code section 1014, as relevant, provides: "Subject to Section 912 [which section is here inapposite] and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by: (a) The holder of the privilege; . . ."

In the ensuing discussion we assume that Hopkins was a patient,[1] and, arguendo, that his arrest resulted from his disclosure to a person who was a psychotherapist, and not to the later disclosures to the nonpsychotherapist hospital nurses.[2] We further assume that the disclosure was a "confidential communication" as the term is used in section 1012.[3]

---

[1] Evidence Code section 1011: "As used in this article, 'patient' means a person who consults a psychotherapist or submits to an examination by a psychotherapist for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his mental or emotional condition or who submits to an examination of his mental or emotional condition for the purpose of scientific research on mental or emotional problems."

[2] Evidence Code section 1010 provides in part: "As used in this article, 'psychotherapist' means: (a) A person authorized, or reasonably believed by the patient to be authorized, to practice medicine in any state or nation who devotes, or is reasonably believed by the patient to devote, a substantial portion of his time to the practice of psychiatry; (b) A person licensed as a psychologist under Chapter 6.6 (commencing with Section 2900) of Division 2 of the Business and Professions Code; . . ."

Evidence Code section 1028: "Unless the psychotherapist is a person described in subdivision (a) or (b) of Section 1010, there is no privilege under this article in a criminal proceeding."

[3] Evidence Code section 1012: "As used in this article, 'confidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those

But Hopkins makes no mention in his briefs of the qualifying Evidence Code section 1024 which states: "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."

In its January 1965 official comment on the then proposed Evidence Code section 1024, the California Law Revision Commission stated: "Although this exception might inhibit the relationship between the patient and his psychotherapist to a limited extent, it is essential that appropriate action be taken if the psychotherapist becomes convinced during the course of treatment that the patient is a menace to himself or others and the patient refuses to permit the psychotherapist to make the disclosure necessary to prevent the threatened danger."

It is true that a "patient's interest in the confidentiality of the psychotherapist relationship rests, in part, on constitutional underpinnings." But *reasonable* state interference (which we find § 1024 to be) with the confidentiality is nevertheless proper. (See *In re Lifschutz,* 2 Cal.3d 415, 432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].)[4]

From the evidence the trial court reasonably concluded that the psychotherapist had reasonable cause to believe that Hopkins was "in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication [was] necessary to prevent the threatened danger."

Under the circumstances Hopkins held no privilege under Evidence Code section 1014. The trial court did not err in denying the motion to suppress.

II. Urging that "burglary accompanied with intentional infliction of great bodily injury" is a lesser offense included in the charge of "robbery

who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship."

[4]Weighing the "public importance of safeguarding the confidential character of psychotherapeutic information" against the "public interest in safety from violent assault," the state's Supreme Court in *Tarasoff* v. *Regents of University of California* (Cal.) upheld the validity of Evidence Code section 1024.

accompanied with intentional infliction of great bodily injury," Hopkins argues that he was twice convicted for but one offense.

The point is patently without merit.

■ A *necessarily* included offense exists when the charged offense as defined by statute, or as stated in the accusatory pleading, *cannot* be committed without also committing a lesser and included offense. (*People* v. *Cannady*, 8 Cal.3d 379, 390 [105 Cal.Rptr. 129, 503 P.2d 585]; *People* v. *St. Martin*, 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Marshall*, 48 Cal.2d 394 [309 P.2d 456].) One may commit a robbery (as charged in the information and defined by Pen. Code, § 211) with great bodily injury, without committing a burglary (as charged in the information and defined by Pen. Code, § 459) with great bodily injury.

III. ■ Next it is contended that—since Hopkins' count four conviction of the Penal Code section 245 "assault . . . by any means of force likely to produce great bodily injury" was of an offense lesser than, and necessarily included in the robbery charge with its allegation of accompanying infliction of great bodily injury—he may not be convicted of, or punished for, both offenses.

The argument assumes that the *force* which was the subject of the count four conviction, was the same *force* which accompanied the robbery charged in count two.

The People contend that the force of the count four assault conviction was not in the "course of commission of the robbery" (see Pen. Code, § 213), but was instead the striking of Mrs. Turner "in the face with that salami," after the robbery had been completed, when she was tied up and the robbers were leaving the premises.

It is of course essential to the lesser and necessarily included offense concept that the lesser offense be part of, and committed in the course of, the greater. A lesser offense committed independently of the greater logically, and as a matter of law, may not be necessarily included in the greater.

Three questions arise.

First, was the assault upon Mrs. Turner with "that salami" an assault by means of force likely to produce great bodily injury? ■ We

observe that the likelihood of great bodily injury as a result of the means used to commit an assault is essentially a question of fact, to be determined by the trier of fact, here the trial court. (*People* v. *Colbert,* 6 Cal.App.3d 79, 84 [85 Cal.Rptr. 617]; *People* v. *Buice,* 230 Cal.App.2d 324, 345 [40 Cal.Rptr. 877].)

■ The record twice makes reference to the salami. The victim testified that her assailants had taken a "package of salami" from the refrigerator and later, that she was struck on the face with "that salami." It does not appear whether the instrument was packaged sliced salami, or the common closely packaged club-shaped salami. Since error is never presumed we must assume that the trial court's finding of guilt on the Penal Code section 245 count was based on a conclusion that a club-shaped salami was the instrument used in the assault. (See *People* v. *Siegenthaler,* 7 Cal.3d 465, 469 [103 Cal.Rptr. 243, 499 P.2d 499]; *People* v. *Scott,* 24 Cal.2d 774, 777 [151 P.2d 517]; *People* v. *Clifton,* 270 Cal.App.2d 860, 862 [76 Cal.Rptr. 193]; *People* v. *Layman,* 259 Cal.App.2d 404, 408 [66 Cal.Rptr. 267].) And we cannot say, as a matter of law, that the striking of an 89-year-old woman, already badly beaten and with a broken shoulder, on the face with such a salami was not by means of force likely to produce great bodily injury.

The second question is whether the robbery and the final assaultive act were divisible or indivisible transactions. (See *People* v. *Quinn,* 61 Cal.2d 551, 555-556 [39 Cal.Rptr. 393, 393 P.2d 705]; *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839] [cert. den., 365 U.S. 823 (5 L.Ed.2d 700, 81 S.Ct. 708)]; *People* v. *Hernandez,* 242 Cal.App.2d 351, 361 [51 Cal.Rptr. 385]; *People* v. *Tatum,* 209 Cal.App.2d 179, 186 [25 Cal.Rptr. 832].) Such transactions may be divisible even though "closely connected in time and a part of the same criminal venture." (*Neal* v. *State of California, supra,* p. 20; *People* v. *Hernandez, supra,* p. 361.) The question is to be resolved upon the facts of the case. (*People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5]; *People* v. *Wallace,* 199 Cal.App.2d 678, 681 [18 Cal.Rptr. 917].) And it has been repeatedly held that an assault is divisible when it "is not a means of perpetrating the robbery but is an act that follows after the robbery is completed." (*Neal* v. *State of California, supra,* p. 20; see also *In re Chapman,* 43 Cal.2d 385, 389 [273 P.2d 817]; *People* v. *Johnson,* 270 Cal.App.2d 204, 209 [75 Cal.Rptr. 605]; *People* v. *Basnett,* 186 Cal.App.2d 108, 117 [8 Cal.Rptr. 804].) It was said in *People* v. *Davis,* 241 Cal.App.2d 51, 56 [50 Cal.Rptr. 215], that "such senseless violence is severable from the robbery itself and constitutes [an additional offense] for which greater punishment can be given."

Here the evidence established that when the last assault occurred the assailants' objective of robbery had been completed, the stolen money was in their pockets, the victim was bound up, and one of the assailants had already left the premises. The trial court could reasonably have found the assault to be divisible from the earlier robbery.

The remaining question of the instant issue is whether the trial court's finding of guilt on the count four, Penal Code section 245 charge of assault by means of force likely to produce great bodily injury, was premised on the assault which occurred after completion of the robbery.

We do not find in the People's opening statement or final arguments or any other matter in the record furnished us, anything from which the theory, or asserted factual basis, of count four appears. Again, since error is never presumed, we must assume that the trial court's finding of guilt on that count was properly based upon the evidence of the final assault upon Mrs. Turner.

It follows that Hopkins' conviction and sentence on the count four charge have not been established as error.

IV. ▆ Hopkins' next contention of error is the "imposing multiple sentences contrary to Penal Code section 654."

From the evidence the conclusion must be drawn that the burglary (count one), robbery (count two) and the offense against telephone equipment (count three) were an indivisible transaction incidental to but one objective, the robbery of Mrs. Turner. Under established principles of law Hopkins may be punished only for the greater of those offenses. (Pen. Code, § 654; *People* v. *Beamon*, 8 Cal.3d 625, 637-640 [105 Cal.Rptr. 681, 504 P.2d 905]; *Neal* v. *State of California, supra*, 55 Cal.2d 11, 17-21.) Here the offenses, robbery, first degree, and burglary, first degree, are punishable in the same manner (see Pen. Code, §§ 213, 461); neither is greater than the other. But since the prime purpose of Hopkins' criminal adventure was the *robbery* of Mrs. Turner, it seems reasonable that he be punished for that offense.

The judgment must be modified accordingly.

V. In his closing brief on appeal Hopkins raises yet another contention of error.

Relying upon our decision in *People* v. *Romo,* Crim. No. 9767, May 22, 1974, he argues that the statutorily prescribed penalty for violation of Penal Code section 245, subdivision (a), i.e., "state prison for six months to life" is "cruel or unusual punishment" under California's Constitution article I, section 6.

The state's Supreme Court has granted a hearing in *People* v. *Romo,* thus rendering our decision and opinion in that case "a nullity and . . . of no force or effect, either as a judgment or as an authoritative statement of any principle of law therein discussed." (See *Knouse* v. *Nimocks,* 8 Cal.2d 482, 483-484 [66 P.2d 438].)

We hold that the penalty prescribed by Penal Code section 245, subdivision (a), is the law of this state. If it shall hereafter be declared unconstitutional or otherwise invalid by the Supreme Court, Hopkins will undoubtedly be a beneficiary of such a decision.

The judgment of conviction is affirmed as to counts one, two, three and four. However, the superior court will order the sentences as to counts one and three stayed, pending completion of the sentences on counts two and four, at which time the stay will become permanent.

Molinari, P. J., concurred.