[Civ. No. 47298. Second Dist., Div. Four. Aug. 16, 1976.]

In re EDWARD D. et al.,
Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF
PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v.
JANET D., Defendant and Appellant.

## COUNSEL

Benson Schaffer, under appointment by the Court of Appeal, for Defendant and Appellant.

John H. Larson, County Counsel, and Sterling R. Honea, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**FILES, P. J.**—This is an appeal by a mother from judgments making her two sons, aged 14 and 10, dependents of the juvenile court under Welfare and Institutions Code section 600, and placing them in the custody of the Department of Public Social Services (DPSS) for suitable placement. The single issue requiring discussion is the admissibility of the testimony of a clinical psychologist who had examined appellant during the pendency of the proceedings.

Appellant also argues that the evidence is insufficient to support the judgment. Our examination of the record satisfies us that the evidence is sufficient, and no purpose would be served in detailing it in this opinion.

The record shows that, over a period of years, appellant had suffered from mental problems, for which she had been a hospital patient on at least three occasions. In April 1971 she had signed a voluntary placement order permitting the DPSS to place the minors in a foster home. In November 1974 appellant notified DPSS that she desired to regain physical custody. At that time neither of the respective fathers was involved in looking after the minors. DPSS thereupon initiated this proceeding under Welfare and Institutions Code section 600 to bring the minors under the control of the juvenile court.

On December 10, 1974, a hearing upon the DPSS petition was held before a referee of the juvenile court, who made a finding that the minors were persons described in section 600. Five witnesses, including appellant and the older boy, testified, but no physician or psychologist was called as a witness.

At the disposition hearing on March 5, 1975, the juvenile court judge determined that the welfare of the minors required that custody be taken

from the parents, and ordered that the minors be placed in the care of DPSS for suitable placement.

On March 10 appellant applied for a rehearing, and in a written statement of reasons, asserted, among other things, "A review of the transcript of this case reveals no evidence whatsoever of mental illness on the part of the mother."

In April, Mrs. Tetley, placement worker for DPSS, referred appellant to Charles H. Cramer, Ph.D., a clinical psychologist, for psychological evaluation of appellant and the two minors. Mrs. Tetley discussed this with appellant and explained to her that the purpose of the referral was to enable DPSS to make a decision as to whether it would recommend that the children be placed or returned to the appellant's custody. Mrs. Tetley told appellant that in order to determine when it was right for the boys to come home, this evaluation was necessary.[1]

On April 22 Dr. Cramer first saw appellant. Under date of May 13, 1975, he wrote a letter to DPSS stating that upon the basis of his psychological evaluation of appellant and the two boys, he recommended that the boys not be placed in appellant's home, but that there should be "ongoing weekly psychotherapy" for appellant and the boys on a family basis, and that appellant be permitted to visit the boys twice a month.

Following the April 22 meeting appellant continued to see one of the psychologists in Dr. Cramer's clinic "on a weekly basis."

The order granting rehearing was signed April 24 and the rehearing took place before the juvenile court judge on June 9. At that time

---

[1]Mrs. Tetley's testimony includes the following:

"Q. Now, at the direction of yourself and the Department of Public Social Services, was any effort made to work out a plan for the return of the minors to the mother, Mrs. D.? A. Yes, it was my recommendation that a psychiatric evaluation be secured of both the mother and the minors in preparation for the possible return home, eventually of the boys. Q. Was this part of the general plan you had to possibly reunite the boys with the mother? A. Yes. . . . . THE COURT: . . . . And the purpose of this referral was to enable the Department of Public Social Services to make a decision as to whether it would recommend that the children be placed or returned to the mother's custody; is that correct? THE WITNESS: Yes, yes. THE COURT: Did you discuss this with Mrs. D.? THE WITNESS: Yes."

appellant's counsel objected to any testimony by Dr. Cramer concerning his evaluation upon the ground that it was privileged.[2]

The court first received the testimony of Mrs. Tetley and Dr. Cramer (summarized above) as to the circumstances under which the reference was made, following which the court heard argument and sustained the objection.

The county counsel then reopened the examination of Dr. Cramer to elicit his testimony that appellant's mental condition was "dangerous to the two sons." He explained he felt there was a very slight chance of her harming the minors physically, but the danger he referred to was emotional and psychological.

The court permitted Dr. Cramer to testify to his diagnosis under the exception contained in Evidence Code section 1024.[3] Dr. Cramer's letter to DPSS, dated May 13, 1975, was also received as an exhibit. Since we have concluded that, for other reasons, the privilege did not forbid disclosure to the juvenile court, it is unnecessary for us to decide whether the "danger" described by Dr. Cramer is the kind which would make his testimony admissible under section 1024.

Before discussing the applicability of section 1012 we make two preliminary comments.

---

[2]Evidence Code, section 1012: "As used in this article, 'confidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship."

Evidence Code section 1014: "Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . ."

[3]Evidence Code section 1024: "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."

First, since appellant visited Dr. Cramer for diagnosis and treatment for her own benefit as well as for a report to DPSS, she was unquestionably a patient as defined in Evidence Code section 1011.

Second, Dr. Cramer was not appointed by order of the court, and we therefore need not consider the applicability of Evidence Code section 1017. That section, however, is of interest in that it reflects a policy setting apart examinations made for the information of a court.

The definition of "confidential communication" in section 1012 includes information disclosed to "those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted . . . ."

The necessary implication is that an examination may be made in confidence for a particular purpose, and that a communication made for the accomplishment of that purpose neither breaches the confidence nor destroys the privilege. The examination of appellant was of that kind.

The record shows without conflict that appellant understood that she was to be examined by Dr. Cramer to provide a diagnosis or evaluation which would be considered in determining whether she would be given custody of the minors. She knew that the juvenile court judge was the one who would make that decision. Her voluntary participation can only be interpreted as reflecting her consent that Dr. Cramer's evaluation be communicated both to DPSS and to the court for that purpose. Thus, while the information remained confidential as between appellant and the world generally, the transmission of the information to the juvenile court judge was proper in order to accomplish her purpose.

The record does not affirmatively show that her attorney was informed in advance of the referral to Dr. Cramer, or that her attorney advised her concerning it. Nevertheless, the record as a whole supports the inference that she was adequately advised. Her counsel made no contention to the contrary in the juvenile court. Counsel's objection was not that appellant was referred to Dr. Cramer for evaluation and report to DPSS, it was that the result should not be received in evidence by the court.

The specific objection which counsel made to Dr. Cramer's testimony in the juvenile court was on three grounds:

First: counsel argued that the testimony was irrelevant because the examination on April 22, 1975, would not be relevant to appellant's condition when the petition was filed on November 20, 1974. Manifestly, in a disposition hearing, the juvenile court is interested in the present condition of the parent. The relevancy objection has not been pressed upon this appeal.

Second: counsel argued that the examination was confidential and that appellant's consent to a report to DPSS did not take the case out of the privilege. This argument ignores reality. We cannot impute to appellant and her attorney a belief that information given to DPSS as a basis for a recommendation would not be made known to the court by DPSS in support of the recommendation.

Third: counsel argued that "as a matter of basic due process" the evidence should be excluded because in this situation the parent faces a "Hobson's choice:" she must accede to the DPSS request for an examination or be faulted for failure to cooperate.

The coercion which counsel decries comes from appellant's unfortunate history and not from any improper pressure by authorities. Upon the basis of her longstanding problems, her demonstrated inability to care for her children during the previous three years and other information, DPSS had found it necessary to commence this proceeding. After hearing the testimony of appellant, her son, and others, a referee had decided that the minors' welfare required that they remain with someone else. When she applied to the juvenile court judge for a rehearing, it was most appropriate that DPSS ask for a professional evaluation to aid the court in its decision. Appellant's willingness can only be interpreted as reasonable and intelligent cooperation with DPSS and the juvenile court, whose function was to protect the minors. The procedure followed was consistent with due process.

The judgments are affirmed.

Kingsley, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The major issue before us is the correctness of the juvenile court's ruling that the psychotherapist-patient privilege was not available in the proceedings below to support the claim of privilege made by the

appellant-patient in an effort to preclude testimony by Dr. Cramer, her psychotherapist. The juvenile court ruled that the psychotherapist-patient privilege would have been applicable to preclude the testimony of Dr. Cramer had not the *exception* to this privilege applied—the exception set forth in Evidence Code section 1024 for the situation where the psychotherapist determines that the patient is dangerous to himself or others. The majority upholds the juvenile court's ruling on the ground—not relied upon by the juvenile court—that Evidence Code section 1012, which defines a "confidential communication between patient and psychotherapist," specifically authorized disclosure to the juvenile court of any communication from the appellant-patient to Dr. Cramer and Dr. Cramer's diagnosis of her mental or emotional condition. The majority deemed it unnecessary, therefore, for the appellate court to consider the applicability of the dangerous-patient *exception* to the psychotherapist-patient privilege provided by Evidence Code section 1024.

The majority's interpretation of Evidence Code section 1012 is erroneous and untenable. The majority holds that the record establishes that the appellant became a patient of Dr. Cramer with full knowledge and understanding that her communications to Dr. Cramer and Dr. Cramer's diagnosis of her condition would be transmitted to the juvenile court. The majority concludes that information communicated by the appellant-patient to Dr. Cramer, her psychotherapist, remained confidential as between the patient and the world generally, but that Dr. Cramer's testimony as to this information and his diagnosis of the patient's condition was proper under the clause in Evidence Code section 1012 which provides that a confidential communication between patient and psychotherapist remains confidential for the purpose of the psychotherapist-patient privilege even though the patient is aware that disclosure of such communication is being made to a *third person* to whom "disclosure is reasonably necessary for . . . the accomplishment of the purpose for which the psychotherapist is consulted." The majority concludes that the *very purpose* of the *consultation* was to have Dr. Cramer make a disclosure to the juvenile court of communications to him from appellant and of his diagnosis of her mental and emotional condition.

This interpretation of Evidence Code section 1012, made by the majority opinion, is untenable and erroneous for several reasons. The majority's interpretation makes it appear that the psychotherapist-patient

privilege was created to apply in nongovernmental situations as well as in governmental proceedings. This overlooks the fact that the Evidence Code itself has application only in civil and criminal actions,[1] although the provisions relating to privileges apply to other governmental proceedings also.

None of the confidential communication privileges has application to preclude disclosure in a social setting, for example. Hence, I am unable to understand the majority's statement that, "while the information remained confidential as between appellant and the world generally, the transmission of the information to the juvenile court judge was proper in order to accomplish her purpose."

To make clear that the various privileges were created to operate in a wider range of governmental proceedings than other provisions of the Evidence Code, section 901 thereof defines "proceeding" to mean "any action, hearing, investigation, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given." Evidence Code section 910 makes "the provisions of this division [sections relating to privileges] apply in all proceedings [as defined in section 901]."

The Law Revision Commission's comment to Evidence Code section 910 explains the reasons for broad application of the privileges to all types of governmental proceedings in the following language: "If confidentiality is to be protected effectively by a privilege, the privilege must be recognized in proceedings other than judicial proceedings. The protection afforded by a privilege would be insufficient if a court were the only place where the privilege could be invoked. Every officer with power to issue subpoenas for investigative purposes, every administrative agency, every local governing board, and many more persons could pry into the protected information if the privilege rules were applicable only in judicial proceedings. [¶] Therefore, the policy underlying the privilege rules requires their recognition in all proceedings of any nature in which testimony can be compelled by law to be given. Section 910 makes the privilege rules applicable to all such proceedings."

---

[1]Evidence Code section 12, subdivision (a), provides, in relevant part, that "[t]his code shall become operative on January 1, 1967, and shall govern *proceedings* in *actions* brought on or after that date . . . ." (Italics added.) Section 105 of the Evidence Code defines "action" to include "a civil action and a criminal action."

In addition, the majority's interpretation of Evidence Code section 1012 would permit the appellant-patient to claim the psychotherapist-patient privilege and preclude Dr. Cramer from testifying in any judicial action other than the juvenile court action. I know of no authority for the view that a confidential communication privilege has *no* application in *one* judicial action (here, a juvenile court proceeding) but applies in *all other* judicial actions to preclude disclosure of confidential communications, on the theory that the holder of a privilege has a privilege that is protectible against the whole world with the exception of the one specific judicial proceeding. This view is contrary to the established principle of waiver of privileges. Thus, in *People v. Garaux* (1973) 34 Cal.App.3d 611 [110 Cal.Rptr. 119], it was held that a defendant in a murder case could not validly claim the psychotherapist-patient privilege to preclude a psychiatrist from testifying to communications made to him by the defendant. Defendant had waived the privilege (pursuant to Evid. Code, § 912) by having called the psychiatrist to testify in a completely unrelated case and thereby *consented* to disclosure of the defendant's communications—communications that would otherwise have remained privileged from disclosure under the psychotherapist-patient privilege.

The majority misreads the language of Evidence Code section 1012 which defines a "confidential communication between patient and psychotherapist" to include information that may be disclosed to third persons under certain defined circumstances. This misreading occurs when the majority makes an unwarranted definition of the phrase, "those to whom disclosure is reasonably necessary for the transmission of the information or *the accomplishment of the purpose for which the psychotherapist is consulted.*" (Italics added.) The majority interprets this phrase to mean, in the case at bench, that the *purpose* of the consultation between the appellant-patient and the psychotherapist, Dr. Cramer, was to have *Dr. Cramer convey to the juvenile court* the appellant's communications to him and his diagnosis of her condition. Hence, the majority concludes that Evidence Code section 1012 was *not* violated by permitting Dr. Cramer to testify at the dispositional hearing.

This interpretation of Evidence Code section 1012, made by the majority, ignores a cardinal principle of statutory construction that one provision of a statute must be considered in light of other provisions constituting the statutory scheme so as to produce a harmonious whole. "[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory

framework as a whole." (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

The majority's interpretation of Evidence Code section 1012 ignores, for example, Evidence Code section 917 that pertains to all the confidential communication privileges—the lawyer-client privilege, the physician-patient privilege, the clergyman-penitent privilege, the husband-wife privilege, as well as the psychotherapist-patient relationship. Section 917 provides that "[w]henever a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of [one of these privileged relationships], the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." The deputy county counsel, representing the Department of Public Social Services (DPSS), the petitioner in the instant case, did *not* convince the juvenile court judge that the presumption of confidentiality had been overcome, since the juvenile court judge, in denying appellant's claim of privilege, predicated his ruling on Evidence Code section 1024, which creates an *exception* to the psychotherapist-patient privilege where the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger.

The majority takes the view, by implication, that the presumption of confidentiality was overcome as a matter of law and that the ground of the trial judge's ruling, namely, the exception to the psychotherapist-patient privilege, set forth in Evidence Code section 1024, was not required to be discussed. In my view the juvenile court judge's ruling that the psychotherapist-patient privilege was applicable unless the exception provided by Evidence Code section 1024 came into play was a correct ruling. However, as I shall explain subsequently herein, I consider that the juvenile court judge erred in finding that the dangerous-patient exception provided in section 1024 was applicable to permit the testimony of Dr. Cramer, the psychotherapist.

The majority's analysis of Evidence Code section 1012 also overlooks the fact that section 1012 uses almost identical language to that used in defining a "confidential communication" for two other confidential communication privileges—the lawyer-client privilege (Evid. Code, § 952) and the physician-patient privilege (Evid. Code, § 992). The

language in section 1012, upon which the majority focuses to arrive at its interpretation of that section, is language that is *common* in all three privileges. This common language is inserted specifically in the three sections (Evid. Code, §§ 952, 992 and 1012) to *permit* a communication in the designated relationship to be deemed and considered a *confidential* communication even though, to the privilege holder's knowledge, disclosure is made to a person "to whom disclosure is reasonably necessary for the . . . accomplishment of the *purpose* for which the [lawyer, physician or psychotherapist] is *consulted* . . . ." (Evid. Code, §§ 952, 992, 1012.) (Italics added.)

In concluding that the appellant's consultation with Dr. Cramer was for the *purpose* of having the appellant's communications and the psychotherapist's diagnosis of her condition transmitted to the juvenile court judge, the majority fails to take cognizance of the basic reason for the Legislature's use of common language in the three privileges, and that the phrase, "purpose" of consultation, is given a specific and similar definition by Evidence Code section 951 in defining "client" for the lawyer-client privilege, by Evidence Code section 991, in defining "patient" for the physician-patient privilege, and by Evidence Code section 1011 in defining "patient" for the psychotherapist-patient privilege.

Thus, Evidence Code section 951 defines a "client" for the lawyer-client privilege to mean "a person who, . . . consults a lawyer *for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity,* . . ." (Italics added.) Evidence Code section 991 defines "patient" for the physician-patient privilege as meaning "a person who consults a physician or submits to an examination by a physician *for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his physical or mental or emotional condition.*" (Italics added.) In similar vein, Evidence Code section 1011 defines "patient" for the psychotherapist-patient privilege to mean "a person who consults a psychotherapist or submits to an examination by a psychotherapist *for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his mental or emotional condition or who submits to an examination of his mental or emotional condition for the purpose of scientific research on mental or emotional problems.*" (Italics added.)

It is obvious, therefore, that the language found in Evidence Code section 1012 which provides that a *known* disclosure of confidential

information to a third person does not eliminate the confidentiality of the communication for the psychotherapist-patient privilege if the disclosure is necessary for "the accomplishment of the *purpose* for which the psychotherapist is consulted," refers to a patient's *purpose of consultation* as defined in section 1011, to wit, "the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his mental or emotional condition or who submits to an examination of his mental or emotional condition for the purpose of scientific research on mental or emotional problems." The language of section 1012 cannot reasonably or logically be twisted to give it any different meaning. And yet, this is exactly what the majority opinion seeks to do.

The similarity of language found in comparable sections of the Evidence Code dealing with the confidential communication privileges indicates a legislative intent that the language be given a uniform construction. With reference to the physician-patient privilege, the disclosure to a third person permitted by Evidence Code section 992 for "the accomplishment of the *purpose* for which the physician is consulted" reasonably can only refer to the *purpose* defined in section 991—the *purpose* of "securing a diagnosis or preventive, palliative, or curative treatment of his physical or mental or emotional condition." With reference to the lawyer-client privilege, the disclosure to a third person, permitted by Evidence Code section 952 for "the accomplishment of the *purpose* for which the lawyer is consulted" reasonably can only refer to the *purpose* defined in section 951—the purpose of "retaining the lawyer or securing legal service or advice from him in his professional capacity, . . . ."

That the uniform language used in Evidence Code sections 1012, 992 and 952 should be given a uniform meaning is also indicated by the Law Revision Commission's comment to section 952. The comment to section 952 points out that confidential communications shall remain confidential in two situations even though the holder of the privilege knows that a disclosure is being made to third persons. One situation includes communications "made to third parties—such as the lawyer's secretary, a physician, or similar expert—for the purpose of transmitting such information to the lawyer because they are 'reasonably necessary for the transmission of the information.'" The second situation is described by the Law Revision Commission's comment as follows: "A lawyer at times may desire to have a client reveal information to an expert consultant in order that the lawyer may adequately advise his

client. The inclusion of the words 'or the accomplishment of the purpose for which the lawyer is consulted' assures that these communications, too, are within the scope of the privilege."

There is still another section of the Evidence Code that uses language similar to that found in Evidence Code sections 952, 992 and 1012. This is Evidence Code section 912 which deals with the subject of *waiver* of the various confidential-communication privileges. Subdivision (d) of section 912 provides: "A disclosure in confidence of a communication that is protected by a privilege provided by Section 954 (lawyer-client privilege), 994 (physician-patient privilege), or 1014 (psychotherapist-patient privilege), when such disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer, physician, or psychotherapist was consulted, is not a waiver of the privilege." That the language of *purpose* of consultation—found in the Evidence Code sections dealing with those three privileges—should be given a uniform meaning, is further buttressed by the Senate Committee on Judiciary's comment to section 912. With respect to subdivision (d), the comment is as follows: "Subdivision (d) is designed to maintain the confidentiality of communications in certain situations where the communications are disclosed to others in the course of accomplishing the purpose for which the lawyer, physician, or psychotherapist was consulted. For example, where a confidential communication from a client is related by his attorney to a physician, appraiser, or other expert in order to obtain that person's assistance so that the attorney will better be able to advise his client, the disclosure is not a waiver of the privilege, even though the disclosure is made with the client's knowledge and consent. Nor would a physician's or psychotherapist's keeping of confidential records necessary to diagnose or treat a patient, such as confidential hospital records, be a waiver of the privilege, even though other authorized persons have access to the records. Similarly, the patient's presentation of a physician's prescription to a registered pharmacist would not constitute a waiver of the physician-patient privilege because such disclosure is reasonably necessary for the accomplishment of the purpose for which the physician is consulted. See also Evidence Code section 992. Communications such as these, when made in confidence, should not operate to destroy the privilege even when they are made with the consent of the client or patient. Here, again, the privilege holder has not evidenced any abandonment of secrecy. Hence, he should be entitled to maintain the confidential nature of his communications to his attorney or physician despite the necessary further disclosure."

The majority has stressed the fact that the appellant-patient had knowledge that Dr. Cramer's evaluation of her would be transmitted to the DPSS worker. The majority speculates that appellant should have known that the DPSS worker would relay Dr. Cramer's evaluation of appellant to the juvenile court judge. Appellant has made the argument before us that her consent to Dr. Cramer's transmittal of information to the DPSS worker did *not* take the case out of the psychotherapist-patient privilege. This involves in part a consideration of the second exception provided in Evidence Code section 1012 to maintain confidentiality and existence of the privilege in spite of the patient's knowledge of disclosure to third persons. This second exception involves disclosure to third persons "who are present to further the interest of the patient in the consultation." Although the DPSS worker was not physically present during appellant's consultation with Dr. Cramer, the circumstances are such that the DPSS worker's activities should be deemed synonymous with physical presence to bring her within the ambit of the exception of a person being present to further the interest of the patient—the appellant in the case at bench.

Appellant became a patient of Dr. Cramer at the DPSS worker's request. Appellant had every reason to believe that the DPSS worker sought the consultation for appellant with Dr. Cramer for the sole purpose to further appellant's interest in the consultation. Under these circumstances, appellant's consent to disclosure of information by Dr. Cramer to the DPSS worker should not preclude appellant's communications to Dr. Cramer and his diagnosis of her condition from being considered confidential. The DPSS worker should be held to fall within the category of a person "present to further the interest of the patient in the consultation," thus giving to the word "present" in Evidence Code section 1012 a realistic meaning of not only being *physically* present, but present in the sense of leading the patient to believe that such person's request to the patient to engage in a consultation with a psychotherapist and such person's interest in securing information resulting from the consultation are designed to further the interest of the patient in the consultation with the psychotherapist.

The appropriate analysis of Evidence Code section 1012, including the concept of what constitutes a communication between patient and psychotherapist that is made "in confidence," leads me to the conclusion that, unquestionably, the evidence supports the juvenile court judge's finding that the communications between appellant and Dr. Cramer, her

psychotherapist, and Dr. Cramer's diagnosis, came within the definition of a confidential communication between patient and psychotherapist set forth in Evidence Code section 1012.

In addition to reaching the correct interpretation of the definition of a confidential communication between patient and psychotherapist, set forth in Evidence Code section 1012, we must also take cognizance of another section of the Evidence Code that deals with privileges. This is section 912, alluded to previously herein, which deals with the matter of waiver of those privileges that protect confidential communications, to wit, the lawyer-client privilege (Evid. Code, § 954), the privilege for confidential marital communications (Evid. Code, § 980), the physician-patient privilege (Evid. Code, § 994), the privilege of the penitent (Evid. Code, § 1033), the privilege of the clergyman (Evid. Code, § 1034), and the psychotherapist-patient privilege (Evid. Code, § 1014). Section 912 declares that the right to claim any of these privileges is waived with respect to a communication protected by such privilege if the holder of the privilege has disclosed a significant part of the communication or has consented to such disclosure by another.

Section 912 further declares that a privilege holder's consent to disclosure by another may be manifested in various ways, such as the privilege holder's failure to claim the privilege in a proceeding when the opportunity presents itself. In the case at bench, there was certainly no · consent by appellant's failure to claim the privilege when disclosure was sought in the juvenile court proceeding, since the privilege was claimed when Dr. Cramer was called to testify to communications from appellant and to his diagnosis of the mental and emotional condition of appellant.

Although not relying upon Evidence Code section 912 in reaching its holding, the majority in effect applies this section by taking the position that the mother's very act of consulting Dr. Cramer was conduct which manifested her consent to Dr. Cramer's making a disclosure to the juvenile court judge by virtue of the fact that the DPSS worker advised the mother to consult Dr. Cramer and also advised her that the result of the consultation would be communicated by Dr. Cramer to the DPSS worker. In my opinion, however, these circumstances do not lead to the conclusion that appellant was consenting also to disclosure to the juvenile court. The juvenile court judge did not so find and there is substantial evidence to support that finding. The majority states that appellant's voluntary participation in the consultation with Dr. Cramer can *only* be interpreted as reflecting her consent that Dr. Cramer's

evaluation be communicated *both* to the DPSS worker *and* the juvenile court. I do not agree. The DPSS worker did *not* testify that she informed appellant that Dr. Cramer's evaluation was to be disclosed to the juvenile court judge. The interpretation is far more compelling that appellant's conduct did *not* manifest a consent to a disclosure by Dr. Cramer to the juvenile court of appellant's confidential communications to Dr. Cramer or of Dr. Cramer's evaluation of appellant's condition.

Had the DPSS worker intended or expected that Dr. Cramer's evaluation of appellant was to be transmitted to the juvenile court, she would have sought court appointment of Dr. Cramer to examine appellant. Evidence Code section 1017 creates an *exception* to the psychotherapist-patient privilege for a *court-appointed psychotherapist.* The failure of the DPSS worker to seek court appointment of Dr. Cramer lends additional support for the conclusion that the evidence does *not* support the majority's view that appellant's conduct, based on information from the DPSS worker, constituted a *consent* to Dr. Cramer's testimony in juvenile court concerning his evaluation of her condition or a consent to his transmittal of any information to the juvenile court. On the contrary, the DPSS worker's failure to seek to utilize the exception to the psychotherapist-patient privilege, set forth in Evidence Code section 1017 for the court-appointed psychotherapist, must be construed as part of the substantial evidence which supports the juvenile court's finding that appellant could rightfully claim the psychotherapist-patient privilege to preclude Dr. Cramer's testimony.

In the case at bench, even if the circumstances under which appellant consulted Dr. Cramer may be considered as conduct by her manifesting a consent to disclosure by Dr. Cramer to the juvenile court judge of her communications and of his diagnostic evaluation, such circumstances must also be construed as precluding a finding that appellant's consent to disclosure was "without coercion," as required by Evidence Code section 912, if consent to disclosure is relied upon as constituting a waiver of the privilege. The concept of coercion must be given a liberal construction under the mandate of the California Supreme Court. In *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1], our California Supreme Court, relying upon the United States Supreme Court's declaration that "[v]arious guarantees [of the Bill of Rights] create zones of privacy" (*Griswold* v. *Connecticut* (1965) 381 U.S. 479, 484 [14 L.Ed.2d 510, 514, 85 S.Ct. 1678]), asserted that "we believe that the confidentiality of the psychotherapeutic session falls within one such zone." (*In re Lifschutz, supra,* 2 Cal.3d 415, at pp. 431-432.) And in

*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 337 [107 Cal.Rptr. 309, 508 P.2d 309], the Supreme Court, referring to *In re Lifschutz,* added that "because of the potential encroachment upon constitutionally protected rights of privacy by the compelled disclosure of confidential communications between the patient and his psychotherapist [citation], *trial courts should carefully control compelled disclosures in this area.* Thus, the psychotherapist-patient privilege is to be liberally construed in favor of the patient." (Italics added.)

Although authorities are lacking in defining what constitutes a coercive consent, the facts of the instant case establish, without question, that appellant's consent was "not without coercion" and, hence, should be held to be ineffectual for waiver purposes under Evidence Code section 912. Here we have a situation in which a determination had already been made by the juvenile court that appellant's children were dependent children of the court and that the only issue remaining for the dispositional hearing was whether the children would be suitably placed or returned to the appellant's custody.

The DPSS worker's statements to the appellant that a psychotherapist consultation was needed in order for the worker to make a recommendation to the juvenile court is *necessarily* coercive in this setting. Appellant had no freedom of choice whatever. Any reasonable person in the appellant's situation would interpret the DPSS worker's request for a consultation with the psychotherapist as indicating that a failure to heed the request would result in an adverse recommendation by the social worker—a recommendation which would most likely be followed by the juvenile court judge and a suitable placement order made for her children. These facts constitute a *coercive* consent to disclosure beyond a shadow of a doubt and thereby render inapplicable Evidence Code section 912, which defines a consent by the privilege holder to disclosure of a confidential communication as a waiver of a confidential-communication privilege *only* if such consent is given "without coercion."

It is my view that the juvenile court judge was correct in finding that the psychotherapist-patient privilege applied in the instant case unless the situation came within an exception to the privilege. Since the juvenile court judge held that the dangerous-patient exception did apply, it is necessary that this exception, set forth in Evidence Code section 1024, be analyzed. This section creates an exception to the psychotherapist-patient privilege where the patient is dangerous to

himself or others. Section 1024 provides that the psychotherapist-patient privilege does not exist "if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger." I consider that the juvenile court judge erred in holding that this section was applicable in the factual situation presented.

There is only one case of which I am aware that deals with the question of the construction of Evidence Code section 1024. This is the case of *People* v. *Hopkins* (1975) 44 Cal.App.3d 669 [119 Cal.Rptr. 61]. In *Hopkins,* the defendant was charged in four counts with burglary, robbery, malicious injury to telephone equipment, and assault with force likely to inflict bodily harm. On the day of the crimes charged, defendant, a veteran, consulted a psychiatrist at a veteran's hospital and then admitted to the psychiatrist his participation in the various crimes charged. Before making such confession, the defendant asked the psychiatrist whether everything he said would be confidential, and the psychiatrist replied in the affirmative. It was the information which the defendant gave to the psychiatrist which led to the former's arrest and the introduction in evidence of the confession. Although the court did not discuss the meaning to be given to the phrase used in Evidence Code section 1024 of "dangerous to himself or to the person or property of another," the *Hopkins* court held that, from the evidence, the trial court reasonably concluded that the facts fell within the exception to preclude the defendant from having a valid claim of the psychotherapist-patient privilege.

There can be no doubt that the exception created by Evidence Code section 1024 has application if the psychotherapist makes a reasonable prediction that the patient presents a serious danger of physical violence to others. Although not making an interpretation of Evidence Code section 1024, the California Supreme Court dealt with the question of the public interest in safety from violent assault in *Tarasoff* v. *Regents of the University of California* (1976) 17 Cal.3d 425, 442 [131 Cal.Rptr. 14, 551 P.2d 334], and concluded that "the public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others. The protective privilege ends where the public peril begins."

But *Tarasoff* does not provide the answer to a determination of how far Evidence Code section 1024 covers a situation in which the

psychotherapist has reasonable cause to believe that the patient constitutes a danger to himself or to another person in terms of *emotional* or *psychological harm.* By analogy, however, we may look to section 6300 of the Welfare and Institutions Code, which defines a mentally disordered sex offender as a person who is "dangerous to the health and safety of others." In *People* v. *Stoddard* (1964) 227 Cal.App.2d 40 [38 Cal.Rptr. 407], the court held that the likelihood of causing *serious* psychological harm to young girls was within the contemplation of dangerousness under Welfare and Institutions Code section 6300. In the recent case of *People* v. *Kirk* (1975) 49 Cal.App.3d 765, 771 [122 Cal.Rptr. 653], the court remarked in a mentally disordered sex offender case that "[t]he concept of what is dangerous must be determined on a case-by-case basis."

In the Law Revision Commission's comment to section 1024, it is said that, under this exception, "it is essential that appropriate action be taken if the psychotherapist becomes convinced during the course of treatment that the patient is a *menace* to himself or others and the patient refuses to permit the psychotherapist to make the disclosure necessary to prevent the threatened danger." (Italics supplied.)

The legislative intent in enacting Evidence Code section 1024 would seem to require that, before the exception applies for a danger to the emotional or psychological welfare of a third person from the patient, there would need to exist a degree of seriousness to the psychological or emotional welfare of that person of such character to create a substantial danger of *irreversible* harm to the emotional and psychological well-being of the person threatened by the patient. Such a construction of section 1024 would seem to be mandated by the policy established by the Supreme Court that the psychotherapist-patient privilege is to be liberally construed in favor of the patient and that provisions in the Evidence Code for nonapplicability of the privilege shall be carefully scrutinized and interpreted. (See *Roberts* v. *Superior Court, supra,* 9 Cal.3d 330, at p. 337.) The Law Revision Commission's comment to section 1024, in using the word *"menace,"* supports the view that the danger of psychological or emotional harm must be harm of serious proportions.

In testifying that, in his opinion, appellant's condition was such as to be dangerous to her children, Dr. Cramer stated that her emotional condition was such that it would be detrimental to the two children. He stated that there was very little chance of any danger physically to the

children, but that the danger was emotional and psychological. He explained this emotional and psychological danger in terms of the inability of the mother to empathize with her children and other people so that she would be unable to offer emotional stability. He further testified that his concept of danger was in terms of the best emotional development of the youngsters.

Certainly the opinion of Dr. Cramer that appellant's condition was such that she did not offer very good emotional support to her children cannot be construed as the type of menace envisioned by Evidence Code section 1024. The testimony of Dr. Cramer established no more than that, in his opinion, it would not be in the best interest of the children for the appellant-mother to have custody. This is clearly insufficient to justify the application of section 1024 to the case at bench. I would hold, therefore, that the juvenile court judge committed error in finding that Evidence Code section 1024 was satisfied to preclude application of the psychotherapist-patient privilege.

Since the record reflects that the juvenile court relied in substantial part on the testimony of Dr. Cramer in arriving at the court's conclusion that appellant's children should be suitably placed, I would reverse the juvenile court's order from which the appeal has been taken.

A petition for a rehearing was denied August 26, 1976. Jefferson (Bernard), J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied October 14, 1976.