[Crim. No. 22033. Dec. 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
BILLY JOE LOCK, Defendant and Appellant.

**COUNSEL**

Skipper & Collier, Ronald G. Skipper and E. Toby Bowler for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, J.**—Defendant Billy Joe Lock appeals from a judgment of conviction upon a plea of guilty to lewd or lascivious acts upon the body of a child under 14 (Pen. Code, § 288). He contends that the trial court abused its discretion when it denied him treatment and sentenced him to prison after determining that he was a mentally disordered sex offender (MDSO) under section 6316 of the Welfare and Institutions Code.[1]

Defendant, a teacher, was charged with three counts of lewd or lascivious acts on a child under 14 and one count of oral copulation on a child under 14 (Pen. Code, §§ 288, 288a). After a plea of guilty to one of the section 288 counts, criminal proceedings were suspended on April 11, 1980, defendant was certified for examination and hearing to determine whether he was an MDSO (§ 6302), and a medical commission was appointed pursuant to section 6307.

The probation report that preceded the suspension of criminal proceedings included several psychiatric reports submitted by defendant, all of which agreed that he was in need of treatment. The reports unanimously recommended therapy on an outpatient basis.[2] The probation report itself concluded: "... Defendant Lock is viewed as possessing excellent potential to succeed on probation. However, this department recommends, in accordance with the law, that proceedings be suspended so that he may be examined by a Medical Commission to determine whether or not he is a Mentally Disordered Sex Offender. Presumably, the examining physicians would recommend an appropriate course of treatment and whether or not the defendant requires incarceration for this treatment and for the safety of others."

An MDSO hearing was held on May 23, 1980 (§ 6316); the matter was submitted on the psychiatric reports of the two court-appointed doctors. The doctors agreed that defendant was an MDSO and amenable to treatment, and both recommended that he be placed on probation

---

[1]Unless otherwise indicated, all statutory references hereafter are to the Welfare and Institutions Code.

[2]One report speculated that "[i]ncarceration probably would be quite detrimental ...." It too recommended outpatient psychiatric care.

where he could seek private psychiatric treatment.[3] The court indicated that it had read the psychiatric reports and found defendant "to be an MDSO pursuant to the legal requirements in that regard." The court continued: "I'm interested in knowing why he shouldn't go to prison." Defense counsel responded by a plea for probation. The court expressed concern for "the kids in school" if defendant were not incarcerated, indicated that it had read and reviewed the probation report, denied probation, and sentenced defendant to state prison for the middle term of five years.[4] When defense counsel questioned the court on the basis for the sentence, it responded: "Because he committed the offense against children. He's a teacher. That's what I base it on.... I think it's about time teachers quit doing these things to the kids in our schools."[5] Defendant is on bail pending appeal.

■ Defendant contends that the trial court abused its discretion under section 6316 when it denied him treatment as an MDSO and sentenced him to state prison. Although his claim of error is directed to the prison sentence itself, the thrust of his argument is that the court did not understand the extent of its powers, the availability of options for an MDSO commitment, or the effect of such a commitment.

[3]The psychiatrist, Dr. Ramsaran, concluded:

"This 36-year-old single man, a school teacher, has shown psychosexual immaturity. During the past year he became sexually involved with three of his students, minor males. He has shown no other sociopathic behavior. After his arrest, he became depressed and suicidal. He is now in individual psychotherapy. He plans to get into personnel management and no longer be associated with young males in the course of his work. In my opinion, he is a Mentally Disordered Sex Offender under Section 6300 of the Welfare and Institutions Code, as his behavior was a danger to minor males. I recommend that he continue in outpatient psychotherapy, which together with probation will be a deterrent to further sexual offenses."

The clinical psychologist, Dr. Lampel, concluded: "Billy Joe Lock is a mentally disordered sex offender. In making recommendations concerning his future treatment, several factors were taken into account: He has a long and adequate work history; these appear to be the first and only acts of this nature he has committed; he appears to be genuinely guilty about and ashamed of his behavior; no violence was used on the children. It would therefore appear that he is a good candidate for outpatient treatment. He does not appear to be a danger to the health or safety of others at this time. It would appear that he could secure and finance his own mental health treatment through Kaiser Hospital or another approved agency."

[4]The court reserved the right to recall the sentence under section 1170, subdivision (d) of the Penal Code.

[5]One cannot help suspecting that the trial court violated the principle of individualized sentencing. (See *People* v. *Cheatham* (1979) 23 Cal.3d 829, 834-836 [153 Cal.Rptr. 585, 591 P.2d 1237]; cf. *In re Rodriguez* (1975) 14 Cal.3d 639, 654 [122 Cal.Rptr. 552, 537 P.2d 384].) Of course it was highly relevant that defendant was a school teacher and that his victims were particularly vulnerable. This does not mean, however, that it was proper to deny probation without even considering other relevant facts, as seems to have been the case.

At the time, section 6316 provided in pertinent part: "If, after examination and hearing, the court finds that the person is a mentally disordered sex offender and that the person could benefit by treatment in a state hospital, or other mental health facility the court in its discretion has the alternative to return the person to the criminal court for further disposition, or may make an order committing the person to the department for placement in a state hospital, or may commit the person to the county mental health director for placement in an appropriate public or private mental health facility, approved by such director, and a copy of such commitment shall be personally served upon said person within five days after the making of such order. . . .

"If after examination and hearing, the court finds that the person is a mentally disordered sex offender but will not benefit by care or treatment in a state hospital or other facility the court shall then cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge. Such court shall resume the proceedings and shall impose sentence or make such other suitable disposition of the case as the court deems necessary."

This statutory scheme contemplates a multi-step procedure: First, the court must determine whether the defendant is an MDSO; second, it must find whether or not he could benefit by treatment in a state hospital or other mental health facility.[6] If the court finds that defendant is not an MDSO or that, if he is, he could not benefit by treatment, it has no discretion but to return him to criminal court—or, more realistically, to put on its other hat—for further proceedings. On the other hand, if the court finds both that the defendant is an MDSO and that he could benefit by treatment, it then has two options which it may exercise within the parameter of its discretion: It may commit him as an MDSO or it may return him to criminal court. The Welfare and Institutions Code tells us little about the criteria pertinent to the exercise of the court's discretion except that, at the time, it provided that "as far as possible . . . [MDSOs] shall be treated, not as criminals, but as sick persons." (§ 6250.)

---

[6]The psychiatric and psychological reports apparently assumed that the trial court had a third alternative—outpatient status as an MDSO. Although outpatient status could be achieved after commitment to a state hospital or county facility, in May 1980 the trial court was not empowered to grant outpatient status as part of an MDSO proceeding. This option was added when section 6316 was amended to permit that alternative. (Stats. 1980, ch. 547, § 19; see also Stats. 1981, ch. 711, § 1210.18 subd. (a), No. 6 West's Cal. Legis. Service, p. 2273, No. 5 Deering's Adv. Legis. Service, p. 494.)

Until recently no statute or rule of court demanded that the trial court state its reasons for the exercise of its discretion and, were the matter still ours to decide, we might have difficulty distinguishing the decision to handle a defendant as an MDSO or as a criminal from the decision to grant or deny probation which, as we held in *People* v. *Edwards* (1976) 18 Cal.3d 796, 800-805 [135 Cal.Rptr. 411, 557 P.2d 995], does not call for a statement of reasons. The matter has, however, been taken out of our hands. Section 1170, subdivision (c) of the Penal Code commands that the "court shall state the reasons for its sentence choice on the record at the time of sentencing." Rule 405(f) of the Sentencing Rules for the Superior Courts, part of the California Rules of Court, defines "sentence choice" to mean "the selection of any disposition of the case which does not amount to a dismissal, acquittal, or grant of a new trial." Further, while technically MDSO proceedings are not part of the criminal sentencing proceedings (*People* v. *Loignon* (1967) 250 Cal.App.2d 386, 389 [58 Cal.Rptr. 866]), rule 453 makes it clear that—for obvious practical reasons—the Sentencing Rules encompass the decision to commit or not to commit a defendant as an MDSO.[7] Therefore, that decision is a "sentence choice."

The clear legislative purpose in commanding trial courts to state reasons for their sentence choice is to permit meaningful review. (Cf. *People* v. *Edwards, supra*, 18 Cal.3d at p. 804; *In re Sturm* (1974) 11 Cal.3d 258, 269-270 [113 Cal.Rptr. 316, 521 P.2d 97].) Obviously such review is impossible where the court states no reasons whatever as, at least technically, was the case here.

As noted, immediately after the court found defendant to be an MDSO it inquired "why he shouldn't go to prison." After defendant's counsel unsuccessfully attempted to satisfy the court on that point, the court simply noted that it had discretion "in what it wants to do with regards to the MDSO proceedings ..." and proceeded to enumerate circumstances in aggravation and mitigation, denied probation and sentenced defendant to prison.[8] Whatever reasons the court eventually

---

[7]Rule 453—otherwise of no relevance to this case—provides, in pertinent part: "When a defendant is convicted of a crime for which sentence could be imposed under section 1170 and the court orders that he be committed: ...

"(b) *As a mentally disordered sex offender* pursuant to Welfare and Institutions Code section 6316, the order of commitment shall specify the maximum term of commitment, computed as provided in section 6316.1 of that code." (Italics added.)

[8]The exact point at which the MDSO proceedings ended and the criminal case resumed is hard to tell. Certain is that when the court denied probation the metamorphosis had become a fait accompli.

stated were, strictly speaking, reasons for having denied probation rather than reasons for not having committed defendant as an MDSO. Nevertheless, even if we consider them as such, they are either deficient or indicative of an erroneous view of the consequences of an MDSO commitment.

The reasons are deficient because nowhere does the trial court state whether it found that defendant could have benefited by treatment in a state hospital or other mental facility. For all we know the court did not think about the issue—as suggested by a remark that it "did not really care whose report" it had, when asked whether it had a certain psychiatric report. It is apparent that the court did not exercise its guided discretion in the way the Legislature demanded.

The court's reasons for choosing prison may perhaps be gleaned from its remark, upon denial of probation, that "I think it's about time teachers quit doing these things to the kids in our schools . . . ." The court obviously did not consider that if defendant underwent therapy as an MDSO, he would also be incarcerated. Thus, children would have been protected whether he were committed as an MDSO to a state hospital or sent to prison.[9] In fact, defendant might have been subject to an even longer period of confinement if sent to a hospital as an MDSO. (See § 6316.1 [commitment to extent of maximum permissible prison sentence] and § 6316.2 [extended commitment in two-year increments under specified conditions].) Further, since defendant would receive treatment when confined in a state hospital, there was a greater likelihood that on release from such a facility he would be cured of his deviant sexual propensities.

In summary, it appears that the trial court abused its discretion under section 6316 when it failed to indicate the reasons for not committing defendant as an MDSO, particularly since the record indicates that the court may have had an erroneous view of the consequences of an MDSO commitment.

---

[9]To be fair, defendant's trial counsel may have contributed to this error by claiming, at the outset of the hearing, that "[a]ll four examinations have resulted in the same conclusion: that he is an MDSO amenable to some type of outpatient program and *not amenable to a program in a state hospital or some facility.*" (Our italics.) Apart from the speculation noted in the report mentioned in footnote 2, none of the reports supports the suggestion that defendant's amenability was so conveniently selective. The court, of course, had no right to accept an advocate's unsupported hyperbole.

The judgment is therefore reversed and the matter is remanded to the trial court for further proceedings in accord with the views expressed above.[10]

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Newman, J., and Broussard, J., concurred.

---

[10]Nothing we have said is intended to tie the trial court's hand to any particular disposition on remand.