[Crim. No. 41718. Second Dist., Div. Five. Oct. 19, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE GENE EUBANK, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Michael Tanaka, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ASHBY, J.**—In 2 consolidated informations appellant was charged in 25 counts; 24 of the counts involved sexual crimes and attempts against children, under Penal Code sections 288, subdivisions (a) and (b), 647a, and 664. One count involved attempted escape from the county jail. (Pen Code, § 4532, subd. (b).) Appellant pleaded nolo contendere to 10 of the charges: 2 counts of lewd acts on children under 14 by use of force, violence, duress, menace or threat of great bodily harm (Pen. Code, § 288, subd. (b)); 1 count of lewd acts on a child

under 14 (Pen. Code, § 288, subd. (a)); 4 counts of attempted violation of Penal Code section 288, subdivision (a); 2 counts of annoying or molesting a child under 18 (Pen. Code, § 647a); and 1 count of attempted escape from the county jail (Pen. Code, § 4532, subd. (b)). All the sexual offenses involved different children and occurred between March and May of 1981.

After instituting mentally disordered sex offender (MDSO) proceedings, and receiving doctors' reports, the court found that appellant was an MDSO who could benefit by treatment in a state hospital, but the court exercised its discretion under former[1] Welfare and Institutions Code section 6316 to return appellant to criminal court for further disposition. The court thereafter sentenced appellant to a term of 21⅔ years in the state prison.

■ Appellant's sole contention is that the court based its discretion in returning appellant to criminal court rather than committing him to treatment in a state hospital. We find no abuse of discretion.

Appellant was 33 years old. He was convicted in Texas in May 1971 of indecent exposure to a child, given a suspended state prison sentence and placed on probation. In June 1972 he was arrested in Colorado for kidnaping and assault on a child, but failed to appear in court. He fled to Florida where he was arrested in September 1972 for child molesting and extradited to Colorado. He was committed to the Colorado state hospital from January 1973 to August 1974. In 1975 in Texas he was convicted of indecent exposure with child fondling and sentenced to six years in prison, concurrent with the term of his 1971 Texas offense, probation having been revoked. Discharged from Texas prison in November 1978, he was arrested in Colorado in February 1979. Charged with 14 counts of sexual assault on numerous children, he was declared insane and committed to the Colorado state hospital in May 1979. He escaped from the Colorado state hospital in December 1980, and came to California, where he committed the instant crimes between March and May 1981.

The probation report listed 10 factors in aggravation and 2 in mitigation and concluded: "This defendant is viewed as an extremely dangerous individual who preys on small children for sexual gratification. His deviate sexual behavior has persisted despite numerous attempts at out-patient therapy and two commitments to a mental institution. [¶] . . . This officer doubts the defendant's ability to ever adequately control his pedophilia and believes that past experience has proven that this defendant is not amenable to treatment. The only appropriate disposition in this matter is a state prison commitment for the maximum term of 25 years. . . ."

Dr. Sheel's report for the MDSO proceedings concluded that appellant "fits the classical picture of a chronic, severe, Pedophile." In his opinion, appellant

---

[1] The MDSO law was repealed effective January 1, 1982. (Stats. 1981, ch. 928, § 2, p. 3485.)

is an MDSO who would not benefit from care and treatment in a state hospital. Appellant should be sentenced to state prison based on the fact that he has a "long, extensive history of Pedophilic behavior that has been refractory to treatment."

Dr. Patterson's report for the MDSO proceedings concluded that appellant is an MDSO. ". . . I am somewhat doubtful of his ability to be able to benefit by judicial committment [sic] for treatment at the Atascadero State Hospital. This is based upon the fact that the subject has had a judicial committment [sic] to the Colorado State Hospital from January, 1973, until August, 1974, and a second judicial committment [sic] to the same hospital from July, 1979, until December 7, 1980. Both of these committments [sic] were for the treatment of pedophilic activity. The subject does not appear to have benefitted [sic] from these two treatment periods in addition to having escaped from the second committment [sic] to the Colorado State Hospital. For this reason it is my opinion that his motivation toward involvement in treatment program is up to this point poor. This makes me uncertain as to whether he can benefit from treatment at the Atascadero State Hospital even though he does qualify as a MDSO."

At the MDSO hearing, the court found that appellant is an MDSO who could benefit from treatment in the state hospital, but exercised its discretion to resume the criminal proceedings and sentence him to state prison instead. The court commented: "I think it has been demonstrated to the Court beyond doubt that Mr. Eubank presently constitutes a danger to others by reason of his mental defect. And it seems to me that the real issue here is whether he could benefit from the care and treatment at a state hospital. Whereas I think that the evidence is to some extent less than certain on the subject, I think it is somewhat presumptuous for me to conclude that he can't. I am of the opinion that certainly arguably he can. [¶] And I think really the bottom line of the case is that, should the Court find him to fit all the criteria of a mentally disordered sex offender and find that he is a mentally disordered sex offender and that he can benefit from care and treatment, the real issue in the case is, it seems to me, whether the Court, despite that finding, should commit him to a state hospital or order criminal proceedings resumed. . . . [¶] . . . . [¶] I think that were the evidence substantially more conclusive on his amenability to treatment, I would be more favorably disposed toward recommitment to a state hospital, despite his past failures. The reason why I am most hesitant to do that is because he has demonstrated repeated failure in the past in judicial commitment for the same type of problem. The evidence now is most uncertain as to whether he could benefit, and superimposed upon that is the fact that he presents, by reason of these convictions, a substantial danger to the safety of others." The court further stated, "My thinking primarily is that, in making the finding that your

client could benefit from care and treatment, to be very candid, I have to stretch certainly to find it beyond a reasonable doubt, particularly in light of his record, particularly in light of the psychiatric reports that are submitted now to the Court. [¶] But I am willing to walk that extra step and make that finding out of an abundance of caution, because it is extremely difficult for me to conclude here and now that your client is not going to be able to benefit. The truth of the matter is that I don't think any one person can come to that conclusion. I think it is a very difficult one to—certainly you need harder evidence than I have to arrive at that conclusion." Finally, the court stated, "The Court in the exercise of its discretion in ordering criminal proceedings resumed notes that the defendant has repeatedly been hospitalized for a—at least two times for the same disease that he presently is afflicted with, to no avail, that there is, although the Court has made a finding beyond a reasonable doubt that he could benefit, the finding that he could benefit is nonetheless left with some room that, by reason of past experience, that may not be the case with absolute certainty. [¶] I further find that he presents at this juncture a distinct danger to the safety of other persons, particularly young females."

The fact that appellant "could benefit" from treatment in the state hospital (former Welf. & Inst. Code, § 6316) does not compel that he be committed for such hospitalization rather than sentenced to state prison for his crimes. The statute gives *discretion* to the court to resume criminal proceedings even though the defendant is an MDSO who could benefit by treatment. (*People* v. *Preciado* (1981) 116 Cal.App.3d 409, 411-412 [172 Cal.Rptr. 107]; *People* v. *Oglesby* (1977) 67 Cal.App.3d 34, 38 [135 Cal.Rptr. 640].)[2] There is little statutory guidance for the court in exercising its discretion, but the court must state its reasons for its choice of disposition. (*People* v. *Lock* (1981) 30 Cal.3d 454, 458-459 [179 Cal.Rptr. 56, 637 P.2d 292].)[3]

This was a highly appropriate case for the exercise of discretion in favor of resuming criminal proceedings. Two separate periods of hospitalization in Colorado had failed to rehabilitate appellant of his pedophilia which had manifested itself for nearly 10 years. Appellant had escaped from the latter hospitalization

---

[2]Former Welfare and Institutions Code section 6316 provided, in pertinent part: "(a) (1) If, after examination and hearing, the court finds that the person is a mentally disordered sex offender and that the person could benefit by treatment in a state hospital, or other treatment facility the court *in its discretion has the alternative to return the person to the criminal court for further disposition, or* may make an order committing the person [for treatment at the state hospital or other facility or on outpatient status]." (Stats. 1980, ch. 547, § 19, p. 1525; italics added.)

[3]Former Welfare and Institutions Code section 6250 provided that "as far as possible . . . [MDSO's] shall be treated, not as criminals, but as sick persons." (Stats. 1979, ch. 373, § 368, p. 1399; *People* v. *Lock, supra,* 30 Cal.3d at p. 458.) However, this very general statement of the philosophy of the former MDSO program cannot be deemed conclusive in light of the specific grant of discretion in former section 6316 to resume criminal proceedings even if the defendant is an MDSO who could benefit by treatment.

and had attempted to escape from the county jail infirmary while the instant charges were pending. He had two prior prison terms in Texas for similar conduct. The instant charges were numerous and aggravated.[4] There were numerous victims, appellant had a consistent deliberate and premeditated plan to seek out groups of children, entice them away with a ruse or with money, and fondle them sexually. He used force or the threat of force against young children in several counts.

One of the reasons mentioned by the trial court in this case was that appellant is a distinct danger to the safety of others. Appellant contends this factor is irrelevant because he would also be removed from the community if confined in the state hospital. (*People* v. *Lock, supra,* 30 Cal.3d at p. 460.) However, appellant had escaped from the Colorado state hospital and attempted to escape from the jail infirmary. Notwithstanding that a hospital patient is also confined, it has been recognized that the prison system is "more secure." (*People* v. *Preciado, supra,* 116 Cal.App.3d at p. 412.)

Appellant's main attack is not upon the evidence which supports the judgment but rather on the court's statement of reasons for its decision. Appellant contends it was fatally inconsistent for the court to find, on the one hand, that beyond a reasonable doubt appellant could benefit from treatment in a state hospital, while on the other hand to resume criminal proceedings because of uncertainty whether, in light of past experience, appellant would actually benefit. There is no fatal inconsistency as contended by appellant. The record shows that in making the finding that appellant "could benefit" from treatment, the court was going against the weight of the evidence but thought it would be presumptuous to rule out the possibility that treatment could be beneficial.[5] The court was using "could" in the sense of "an alternative to *can* suggesting less force or certainty." (Webster's New Internat. Dict. (3d ed. 1981) p. 517; italics in original.) However, in exercising its discretion to resume criminal proceedings, the court had in mind its doubt as a practical matter that appellant actually will benefit from treatment. This is a legitimate distinction and a proper factor for the court to consider in exercising its discretion under former section 6316. A finding beyond a reasonable doubt that a defendant "could benefit" from treatment does not require that improvement be certain to occur. (*People* v. *Martin* (1980) 107 Cal.App.3d 714, 723 [165 Cal.Rptr. 773].) The court's reasoning is not inconsistent and no abuse of discretion has been shown.

---

[4]It was stipulated in the plea bargain that the court could consider the dismissed counts in sentencing.

[5]Appellant wanted the court to make the finding, without which resumption of criminal proceedings would have been mandatory. (Former Welf. & Inst. Code, § 6316; Stats. 1980, ch. 547, § 19, p. 1525.)

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.