[Crim. No. 6093. Fifth Dist. Dec. 30, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDY A. SANDERSON, Defendant and Appellant.

822 .

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Augustus E. Noland, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Nelson P. Kempsky and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THE COURT.**\*—Appellant Sanderson was charged in the superior court with burglary (Pen. Code, § 459) and forcible rape (Pen. Code, § 261, subd. (2)). In the course of a plea bargain he pleaded guilty to the rape charge; as a condition of the bargain, the burglary charge was dismissed. Criminal proceedings were then adjourned and two psychiatrists were appointed to examine appellant for the purpose of determining whether or not he was a mentally disordered sex offender (MDSO) and amenable to treatment.

At the hearing on the reports, the matter was submitted on the two written commentaries after appellant waived his right to examine the physicians. The court indicated it had read the reports, which were in conflict, and found them inconclusive. The court agreed that appellant had serious problems and found that he constituted a substantial danger to the community. However, the court determined that appellant was not an MDSO and ordered criminal proceedings be resumed.

---

\*Before Franson, Acting P. J., Zenovich, J., and Quall, J.†

†Assigned by the Chairperson of the Judicial Council.

At the subsequent sentencing, appellant was sentenced to state prison for the upper base term of eight years (Pen. Code, § 264).

Appellant now argues that his sentence to state prison must be reversed because the court failed to state sufficient reasons in support of its decision not to commit appellant as an MDSO.

A brief statement of the facts will suffice for our purposes: The female victim was awakened at approximately 4 a.m. one morning by appellant, a stranger, who was in her bed. Appellant demanded that she disrobe, allowed her to insert a contraceptive device and then forced her to have intercourse with him. During the course of the act, he threatened her with a variety of other sex offenses if she did not "warm up." The victim persuaded appellant to leave the bedroom after the attack and they talked for approximately one-half hour in the living room. When he departed, appellant threatened the woman not to call the police because he "knew where she lived and worked." Fingerprints left on the window where appellant effected entry led to his identification and eventual arrest in Florida.

Appellant informed the probation department and the two examining psychiatrists of his sexual dysfunction: The only way he could obtain sexual gratification was through voyeurism followed by masturbation. Appellant had previously served a two and one-half year state prison term for rape in Florida, commencing in 1978.

The first psychiatrist who examined appellant diagnosed appellant as a voyeur but reasoned that such sexual aberrancy did not fall within the purview of the MDSO Act.[1] The doctor viewed the rape as an aberrant act outside appellant's usual compulsive pattern.[2] However, the doctor opined that if appellant were found to be an MDSO he would benefit from hospital care and treatment. Appellant had represented to this examiner that the woman involved had solicited him as he was attempting to leave the apartment through the window above her bed following a burglary.

Two weeks later appellant was interviewed by a second alienist. Appellant admitted being the aggressor in the offense. The doctor opined appellant appeared sincere in his expression of having a sexual problem but his primary motivation for treatment was one of fear of going to prison. The psychiatrist also diagnosed appellant as a voyeur; he noted appellant's sexual activities were becoming more aggressive and maintained appellant did meet the requirements

---

[1] The MDSO Act was formerly found at Welfare and Institutions Code sections 6300-6330. The MDSO Act was repealed effective January 1, 1982. (Stats. 1981, ch. 928, § 2, p. 3485.) Hereafter it will be referred to as the Act.

[2] The doctor was aware of appellant's Florida prison term.

of an MDSO within the meaning of the Act. The psychiatrist was unable to give an opinion as to whether appellant would be amenable to treatment—he thought a more thorough evaluation was warranted.

## DISCUSSION

The court made the following statement at the hearing on MDSO status: "I have reviewed carefully the probation officer's report with the history of Mr. Sanderson and I agree that he has serious problems and that he is a substantial danger to people in the community; that is evidenced by the activity in our community and also by the similar activity which is related for which he served substantial periods of time in the Florida prison system.

"It appears to me that even if the doctors did agree that he was a mentally disordered sex offender and even if they did agree that he was amenable, I think that I would utilize my option under the case of People vs. [Preciado], 116 Cal.App.3d [409], and determine that the best interest of everyone would be served by incarceration of Mr. Sanderson. Therefore, I am going to find that the defendant, Randy Sanderson, is not a mentally disordered sex offender and I order the criminal proceedings be resumed. . . ."

Appellant finds the above quoted language objectionable for two reasons. First, relying on *People* v. *Lock* (1981) 30 Cal.3d 454 [179 Cal.Rptr. 56, 637 P.2d 292], Penal Code section 1170, subdivision (c), and rules 405(f) and 453, California Rules of Court, appellant argues the trial court failed to articulate supporting reasons for its decision not to commit him as an MDSO.

In *Lock,* both examining physicians were of the opinion the defendant was an MDSO and amenable to treatment. The court found the defendant to be an MDSO but determined because of the nature of the offense (male teacher involved in four charges of sex offenses with children under the age of fourteen) the defendant should be sentenced to state prison. The Supreme Court held that once a person is determined to be an amenable MDSO by a court, the decision whether or not to commit a defendant as an MDSO is a "sentence choice" within the meaning of Penal Code section 1170, subdivision (c), which requires a court to state the reasons for its sentence choice on the record at the time of sentencing. (*Id.,* at p. 459.)

■ Our interpretation of *Lock* is as follows: reasons for a state prison sentence are required only if the court has first determined a defendant to be an MDSO *and* amenable to treatment. (See former Welf. & Inst. Code, § 6316.) At that point the court has the discretion to return the person to criminal court for further disposition *or* commit the person to the department for placement in a state hospital *or* commit the person to the county mental health director for

local placement. (Former Welf. & Inst. Code, § 6313.) It is only after the first two critical determinations are made (MDSO, amenable to treatment) that the discretionary "choice" comes into play. Our interpretation of the language in *Lock* is given credence by the Supreme Court's own language: "If the court finds that defendant is not an MDSO or that, if he is, he could not benefit by treatment, it has no discretion but to return him to criminal court—or, more realistically, to put on its other hat—for further proceedings. . . ." (*People* v. *Lock, supra,* 30 Cal.3d at p. 458.)[3]

In the instant case, the court determined appellant was *not* an MDSO; the mandate of *Lock,* governing a discretionary decision to sentence an *amenable MDSO* to state prison, never came into play. (Cf. *People* v. *Eubank* (1982) 137 Cal.App.3d 339, 343 [186 Cal.Rptr. 405].) The court was under no obligation to give reasons why it determined appellant was not an MDSO.[4]

As a second line of attack appellant argues the trial court worked backward to reach its result, i.e., it stated the reasons why it would send appellant to state prison even if he had been determined to be an amenable MDSO and then denied appellant MDSO status. Appellant surmises the court focused on the end result (sentencing choice) it wanted to reach and then adopted the MDSO finding which would support that conclusion.

Rather than adopt appellant's interpretation, we view the judge's statement at page 824, *ante,* as an honest attempt to explain to appellant that even if the doctors had been in agreement that appellant was an MDSO (which they were not), and even if they had agreed he would be amenable to treatment (which question was left unanswered by one examiner), and the court had so found, the court still would have opted for the more secure treatment setting provided by the state prison system. (*People* v. *Preciado* (1981) 116 Cal. App.3d 409, 411-412 [144 Cal.Rptr. 102]; *People* v. *Eubank, supra,* 137 Cal. App.3d at pp. 343-344.) We detect nothing devious in the court's disposition.

Finally we respond to appellant's contention that early on in the hearing on MDSO status the court performed an "about-face" when it first informed ap-

---

[3]Our research has disclosed there are only two other published opinions to date to cite *Lock* other than those cited in the body of this opinion. One is *People* v. *Goldstein* (1982) 130 Cal.App.3d 1024, 1040 [182 Cal.Rptr. 207] (hg. den.). It is impossible to discern from the body of that decision at what stage of the proceedings the trial court denied appellant's petition for MDSO status, so it is of no benefit to this court in interpreting the scope of *Lock.* The other opinion is our recent decision in *People* v. *Bracamonte* (1982) 137 Cal.App.3d 936 [187 Cal.Rptr. 525]. It is not on point.

[4]The Advisory Committee comment to rule 443, California Rules of Court (Reasons by Sentencing Judge), states in part: "Neither Section 1170(c) nor these rules requires the judge to give reasons explaining why possible dispositions were rejected; . . ." (West's Ann. Cal. Code, Civ. and Crim. Rules (1981 ed.) rule 443, p. 698.)

pellant there was a "very good probability" he would be found an MDSO if the case was submitted on the doctors' reports, but then shortly thereafter determined the two reports were inconclusive and denied appellant MDSO status.

The statement referred to by appellant occurred in the process of advisement of appellant regarding waiver of his right against self-incrimination.[5] The statement, taken in the context of the proceeding at hand, was meant to warn appellant that by not disputing the findings in the reports he was admitting he was an MDSO. That fact, taken in conjunction with whatever the unchallenged doctors' reports might contain, could be sufficient for the court to determine appellant was an MDSO. Once the waivers were completed and it was stipulated that the matter could be submitted on the two reports, the court then made the finding the reports were inconclusive and proceeded to find appellant was not an MDSO within the meaning of the Act. There is no evidence in the record the court performed any "about-face" regarding whether or not in its mind appellant was an MDSO.

The judgment is affirmed.

---

[5]The colloquy between the court and the defendant was as follows:

"THE COURT: Mr. Sanderson, in addition to the rights I've advised you of, you have personally waived, I further advise you you have the right to remain silent, that is, the right against self-incrimination. That means you cannot be compelled to be a witness against yourself. There is a very good probability that you, if you agree to this procedure to have the case submitted to the court on the doctors' reports, you will be found to be a mentally disordered sex offender. Therefore, by agreeing to this procedure, you are incriminating yourself and in all probability, by not making a reply, you are admitting that you are a mentally disordered sex offender. Do you give up your constitutional right against self-incrimination and agree that the court can decide the question of your being a mentally disordered sex offender by merely reading the two doctors' reports?

"[DEFENSE COUNSEL:] Yes, Your Honor."