[No. A039283. First Dist., Div. Three. Jan. 12, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
BARBARA DeLOACH, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts IV, V and VI.

**COUNSEL**

Harvey Zall, State Public Defender, under appointment by the Court of Appeal, and Kent Barkhurst, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Gerald A. Engler and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—Barbara DeLoach appeals from a judgment of conviction entered on a jury verdict finding her guilty of two counts each of pandering and forcible oral copulation, one count of oral copulation with a person under 18 years of age, and one count of unlawful sexual intercourse with a female under the age of 18 years. We affirm the conviction but remand for resentencing.

## I

Appellant Barbara DeLoach is the mother of two daughters, S. (the victim) and R. In August and September 1986, S. was 14 years old and R. was approximately 10. Beginning in 1977, appellant spent a good deal of time in prison or jail as a result of convictions for armed robbery, possession of controlled substances for sale, forgery, and passing bad checks. During the times that she was imprisoned, appellant's daughters lived with her extended family members, such as appellant's sisters.

In August 1986, appellant was released from prison on parole. She and her daughters went to live in a series of cheap motels. According to S., appellant supplemented her welfare income by working as a prostitute. Appellant would take S. along with her while appellant walked the streets, in order to deflect police suspicion and avoid getting arrested. The two girls would play in a park while appellant took her "tricks" to their motel room. At other times, appellant made her daughters shoplift or buy drugs for her.

One night in late August 1986, appellant and S. were walking on El Camino Real in Redwood City when a burgundy Volvo with a beige door pulled over to the curb near them. Appellant approached and conversed with the White male driver of the car whose name was James. Appellant came back to where S. was waiting for her about 10 to 12 feet away and told S. that the man wanted *her*. Appellant "seemed pretty excited about it." S. was scared; she told her mother that she was not going to go with the man. Although appellant told S. that "it was a $50 trick" and they needed the money, S. simply refused to go. Appellant then went back to the man and "told him never mind." After the man drove off, appellant and her daughter returned to their motel room. S. thought that her mother seemed angry because S. had refused to go with the man. S. did not think that such an incident would happen again, because she felt that she had made it clear to her mother that she did not wish to engage in prostitution. S. testified that she had been surprised when her mother asked her to go with the man: in her words, "I didn't think my mother would ever try to ask me something like that."

S. was supposed to start classes at high school on September 2, 1986. However, she did not start attending until September 22, in the third week of school. S. testified that she had wanted to start school on time, and had told her mother this, but that she had not done so because her mother wanted her "to help her take care of her business" by "walking the streets with her."

On or about September 2, 1986, at approximately 12 noon, appellant and S. were walking down El Camino Real when appellant signalled to the

driver of a car. The car was the same one which S. had seen before at the time of the previous incident. As the car pulled into a gas station, the driver, James, asked S. if she was going with him. Before S. could respond, appellant answered for her daughter; in a harsh tone of voice, she said that yes, the girl was going with him. S. told appellant that she was scared and that she did not want to go. Appellant loudly told her that if she did not go, she would "beat [her] ass."[1] In S.'s experience, this meant that her mother would punch her or whip her with a belt after they got home. Scared and nervous, S. got into the car with James.

After she had gotten into the car, James told S. his name, asked what her name was, and asked her how old she was. She told him that she was 14. James told her that he wanted her "to suck his dick." S. told him no, "because that's nasty." S. was afraid of him. James drove her to his apartment in San Carlos and took her upstairs. Once there, he got a beer, rolled and smoked a marijuana cigarette, and told S. to smoke some herself to "calm [her] down." Scared, she took a few puffs. After about five minutes, James grabbed her by her arms and took off her shirt. He then took her into his bedroom, sat her on the bed, took off the rest of her clothes, disrobed himself, and began to kiss her and suck her breasts. After that, he orally copulated her for about 10 minutes. During this time, S. was scared and nervous. She told James this, and tried to get him off of her by pushing him. James made no response.

---

[1] The trial testimony of S. was as follows: "Q. Okay. Who did you hear talk first?
"A. Well, James asked me was I going.
"Q. And what did you say?
"A. Before I could even say anything, my mother said, yeah, I was going.
"Q. Okay. What was your mother's attitude like? What was her voice like when she said, 'Yeah, you are going'?
"A. She was mad.
"Q. What would your answer have been if your mother had given you a chance?
"A. I wouldn't have went.
"Q. How did you feel when your mother said, 'Yes, you are going'?
"A. I was scared, because when she says something like that, I just get scared.
"Q. Okay. Did you say anything to her when she said, 'Yes, you are going'?
"A. I just told her that I don't want to go. I'm scared. I don't want to go.
"Q. And then what did she say?
"A. She told me if I didn't go, she was going to beat my ass.
"Q. Did you believe her when she said that?
"A. Yes, I did.
"Q. And why is it that you believed her?
"A. I've always been scared of my mother when she talked like that.
"Q. Has she ever beat you before?
"A. Well, yeah, a few times before.
".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .
"Q. Did she whisper it when she said it?
"A. No. No, she was talking pretty loud."

After about 10 minutes, James got up, went to the kitchen, and got another beer. After drinking some beer, he returned and began to orally copulate her again for about five minutes. S. kept looking at her watch, "hoping he would get a hint that [she] was ready to go . . . ." Finally, James got up, and they both put their clothes on. He gave her $50. Before letting S. leave, James put her hand on his penis and moved it up and down until he ejaculated. He then drove her back to where he had picked her up. Before driving away, he gave her an extra $20 "[f]or being good." Feeling shaken but happy that the experience was over with, S. returned to her motel room. Appellant asked her how it was; S. told her that she was scared. Appellant told her "not to worry about it, [she would] get over it." Appellant asked S. to give her the money, and S. did so.

September 22 was the first day S. attended school. As soon as she had returned to her motel room from her first day of classes, appellant excitedly told S. that her "friend" was waiting for her at the Jack-In-The-Box next door. Appellant led S. to the Jack-In-The-Box; S. was barefoot. When she saw James parked in the parking lot, she thought "Oh God." James asked S. if she was "going" with him again. S. did not respond; appellant answered for her, saying that yes, S. was going. Appellant's voice sounded to S. as if she would be upset if S. did not go. Still believing her mother's threat from the previous time, and fearing that she "probably would get [her] ass beat" if she refused, S. got into the car with James.

James again took S. to his apartment; he again rolled a marijuana "joint," and had S. smoke some of it. She was scared. James again undressed S. and himself, told her to get on the bed, and orally copulated her for approximately 10 minutes. After that he attempted to have intercourse with her, mounting and partially penetrating her. At this point, S. panicked and pushed James off of her. He asked, "What's wrong?" She responded, "I'm scared." He again attempted intercourse; S. resisted, and told him that she was ready to leave. They got dressed, and James drove her to a bus stop in San Carlos; he gave her $20. When she got home, she turned the money over to her mother, as she felt it was her responsibility to do. Appellant asked "how was it," and S. again told her that she was scared. After that, S. did not discuss the incidents with her mother again, although she was afraid of what would happen if she continued to live with appellant.

In the middle of October 1986, appellant was arrested on unrelated charges. S. and R. went to live with their aunt. On several occasions, S. told her aunt that she did not want to go back to live with her mother when appellant got out of jail; indeed, practically the first thing S. said to her aunt was, "Aunt Beverly, please don't let me go back to my mother . . . ." Her

aunt assumed it was because of "the way they lived," and told her niece that there was nothing she could do about it because appellant was S.'s mother.

About a month later, just before Thanksgiving, S. asked her aunt if she could confide in her. Told that she could, S. told her aunt about what her mother had made her do. S. was upset and crying; she said that she did not want to go back to live with her mother any more. She had not talked to anyone about what had happened up to that point, feeling too ashamed and embarrassed to do so. Her aunt contacted another of appellant's sisters, to whom S. told the same story. After a family meeting, it was decided to contact the authorities.

S. was subsequently interviewed by the child protection agency and by the police. From a photographic lineup, she identified James Moser as the man who had taken her to his apartment in San Carlos. A resident of an apartment at 730 Chestnut in San Carlos testified that James Moser lived in another apartment unit at the same address; that he drove a reddish-colored Volvo with a white door on the driver's side; that sometime in or around September 1986 she had seen Moser with a young Black girl, aged approximately 12 or 13 and barefooted, entering his apartment; and that the young Black girl looked scared, and "like maybe she didn't want to be recognized." She identified S. as the same girl she had seen.[2]

Appellant was charged by information with two counts of pandering, three counts of forcible oral copulation, one count of forcible rape, and one count of unlawful sexual intercourse with a female under the age of 18. The information was subsequently amended to add two prior felony conviction allegations. Following a jury trial, appellant was convicted as charged on both of the pandering counts (counts I and IV), the first two counts of forcible oral copulation (counts II and III), and the unlawful sexual intercourse count (count VII). On the third count of forcible oral copulation (count V), appellant was convicted of the lesser included offense of oral copulation with a person under the age of 18; a mistrial was declared on the charge of forcible rape because of jury deadlock (count VI).

At sentencing, the trial court denied probation and sentenced appellant to three fully consecutive upper terms of eight years apiece on the first count of pandering and the two forcible oral copulation counts; a one-third consecutive midterm of two years on the second count of pandering; and two consecutive eight-month one-third middle terms on the counts for unlawful oral copulation and unlawful sexual intercourse. The court also imposed a

---

[2] According to this neighbor, James Moser moved out of his apartment near the end of December 1986, saying he was going to Australia. By the time a warrant had been issued for his arrest, he had apparently "left town."

one-year enhancement for the prior conviction, bringing the entire sentence to a total term of twenty-eight years and four months.

## II

Appellant's first contention is that she was improperly convicted on two counts of pandering. Appellant evidently concedes that the conviction on the first count of pandering, arising out of the first incident in which appellant forced her daughter to prostitute herself, was supported by substantial evidence. She now contends, however, that the jury could not properly have found that she pandered her daughter in the second such incident, because pandering under Penal Code section 266i is an "ongoing offense"; once appellant had pandered her daughter the first time, "any acts of prostitution by [S.] subsequent to her becoming a prostitute did not, by themselves, give rise to separate counts of pandering." Thus, S. "was already a prostitute as a result of appellant's pandering ten [to twenty] days earlier," and appellant "could not have had the specific intent to cause [her daughter] to become a prostitute" at the time of the second incident on September 22. Appellant's argument is based on the apparent premise that once a person has performed an act of prostitution, even though done under compulsion and duress, that person is irrevocably branded as a prostitute. We firmly reject appellant's contention.

The amended information charged in both counts I and IV that appellant "did willfully, unlawfully, and feloniously, by threats, violence, promises, a device, and scheme, cause[,] induce, persuade, and encourage [her daughter S.], a female person under the age of 16, to become a prostitute." With allowance for minor discrepancies in wording, this is the language of subdivision (b) of Penal Code section 266i, the statute which deals generally with and proscribes "pandering."[3]

---

[3] Penal Code section 266i provides as follows: "Any person who: (a) procures another person for the purpose of prostitution; or (b) by promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages another person to become a prostitute; or (c) procures for another person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state; or (d) by promises, threats, violence or by any device or scheme, causes, induces, persuades or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate; or (e) by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution; or (f) receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution, is guilty of pandering, a felony, and is punishable by imprisonment in the state prison for three, four, or six years, or, where the

As defined by this statute, pandering comprises a broad range of conduct. ■ The purpose of Penal Code section 266i is to "'. . . cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime' . . . ." (*People* v. *Fixler* (1976) 56 Cal.App.3d 321, 327 [128 Cal.Rptr. 363], disapproved on other grounds in *People* v. *Freeman* (1988) 46 Cal.3d 419, 427-428 [250 Cal.Rptr. 598, 758 P.2d 1128].) ■ In the case of some forms of pandering, such as procuring another person "a place as [an] inmate in a house of prostitution," once the proscribed act (e.g., procuring) is completed, any subsequent acts of prostitution by the person procured are not themselves chargeable against the original procurer as separate acts of pandering. (*People* v. *White* (1979) 89 Cal.App.3d 143, 151 [152 Cal.Rptr. 312].) By "procuring" a person "a place as an inmate in a house of prostitution," the procurer has essentially arranged for the ongoing employment of the person procured as a prostitute in that particular place. Once a person has become an inmate of a house of prostitution, that person by definition is expected to perform acts of prostitution so long as he or she remain "an inmate" of that place. Each such subsequent act of prostitution does not constitute a new "procurement," unless or until the prostitute leaves the house of prostitution.

There is a significant difference between this kind of "procuring" under Penal Code section 266i, subdivision (c), as discussed in *People* v. *White, supra,* 89 Cal.App.3d at p. 151, and the form of pandering with which appellant was charged in this case, under subdivision (b) of the statute. ■ Penal Code section 266i, subdivision (b), is intended not only "to inhibit efforts to recruit innocent women into the field of prostitution[;] . . . it covers also cases where a defendant has solicited one whom [she] believes to be a former prostitute to reenter the profession . . . ." (*People* v. *Bradshaw* (1973) 31 Cal.App.3d 421, 426 [107 Cal.Rptr. 256]; see also *People* v. *Lax* (1971) 20 Cal.App.3d 481, 486-487 [97 Cal.Rptr. 722]; *People* v. *Frey* (1964) 228 Cal.App.2d 33, 50 [39 Cal.Rptr. 49].) Under this provision, it is not even necessary that the victim of pandering actually *become* a prostitute; by its terms, the statute includes under its coverage acts which simply "encourage" someone to become a prostitute, whether or not the victim ever performs an act of prostitution at all. (*People* v. *Lax, supra,* 20 Cal.App.3d at pp. 484-487.)

■ Appellant was not charged with procuring S. as an inmate in a house of prostitution, or with giving her a "permanent job" as a prostitute; rather, she was charged with causing, inducing, persuading or encouraging her daughter into committing two separate acts of prostitution, by means of

---

other person is under 16 years of age, is punishable by imprisonment in the state prison for three, six, or eight years."

separate threats on two separate occasions. The evidence, which shows that appellant twice forced her daughter to perform acts of prostitution against her will, fully supports the jury's conviction of appellant on these charges.

Appellant did not transform S. into a prostitute for all time the first time she forced her daughter to go with Moser. The interpretation of Penal Code section 266i urged by appellant would require us to stigmatize the victim in this case as with a new form of Scarlet Letter. We decline to do so. Appellant was properly convicted of two separate counts of pandering as charged.

## III

Appellant's second argument is in two parts. First, she argues that there was insufficient evidence to convict her of forcible oral copulation, contending that once S. agreed to perform acts of prostitution, any acts of oral copulation thereafter were consensual. Second, she urges that appellant cannot be convicted of two separate acts of forcible oral copulation since the acts at issue were part of a single indivisible course of conduct. We disagree with both contentions.

## A.

■ Appellant's first argument is that her convictions for pandering and for forcible oral copulation are incompatible because once S. became a prostitute, albeit on account of appellant's coercion, her various acts of prostitution were necessarily consensual. This argument, like her previous contention that she could not be convicted of two separate counts of pandering, again relies on the premise that once she had forced her daughter into performing acts of prostitution with Moser, S. had somehow been permanently inducted into the profession of prostitute. As already discussed, the statutory crime of pandering with which appellant was charged does not include as one of its elements any requirement that the victim of the pandering actually have become a prostitute. Contrary to appellant's contention, the jury did *not* find that S. was a prostitute; instead it found that she had twice been coerced into performing acts of prostitution.

The key issue is whether the acts of oral copulation which took place were consensual. Our review of the testimony persuades us that they were not. S. pleaded with her mother not to make her go; on the first occasion when they had encountered Moser, S. had simply refused. Later, appellant ordered S. to go with Moser under threat of force. The conversation between S. and appellant took place in the presence of Moser; he was aware that S. did not want to go with him, and that her mother was forcing her to

do so. Throughout the oral copulation, S. repeatedly told Moser that she was scared; she even tried to push him off physically.[4]

The evidence supports the conclusion that appellant acted with full knowledge of Moser's criminal purpose, that appellant acted with an intent of encouraging or facilitating the commission of the criminal acts which he committed; and that S. did not consent to the acts which took place. Appellant was therefore criminally liable as an aider and abettor of the forcible sex acts to which her daughter was subjected. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]; *People* v. *Greenberg* (1980) 111 Cal.App.3d 181, 185-186 [168 Cal.Rptr. 416]; *People* v. *Roberts* (1972) 26 Cal.App.3d 385, 387-388 [103 Cal.Rptr. 25]; *People* v. *Haywood* (1955) 131 Cal.App.2d 259, 261-262 [280 P.2d 180].)

## B.

Appellant argues that she cannot be convicted on more than one count of forcible oral copulation because the subject sex act constituted a single indivisible course of conduct. We disagree.

The evidence shows that the first episode of oral copulation lasted approximately 10 minutes. Moser then stopped, got up, went to the kitchen, opened a can of beer, and drank some of it. Then, he returned and began to orally copulate S. again, this time for about five minutes. Throughout the first episode, the victim kept telling Moser that she was scared; she even tried to push him off. During the second episode, she kept saying she had to leave, hoping that Moser would take a hint.

Even though both acts were committed pursuant to a single continuous desire for sexual gratification on Moser's part, the acts were separated by a period during which he totally stopped what he was doing, got up, and calmly drank some beer. Moser thus had a reasonable opportunity for reflection on what he was doing. (Compare *People* v. *Hammon* (1987) 191 Cal.App.3d 1084, 1096-1099 [236 Cal.Rptr. 822], with *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Marks* (1986) 184 Cal.App.3d 458, 465-466 [229 Cal.Rptr. 107]; and *People* v. *Clem* (1980) 104 Cal.App.3d 337, 346-347 [163 Cal.Rptr. 553].) We conclude that two separate acts of forcible oral copulation took place here, and that appellant was properly convicted of both of these separate acts of forcible oral copulation.

---

[4] A plausible argument could be made that since S. was only 14 years old, she was not old enough to "consent" to the acts which her mother forced her to do. (Cf. Pen. Code, §§ 266, 266j, and 267.)

## IV-VI*

. . . . . . . . . . . . . . . . . . . . . .

## VII

■ Appellant contends that Penal Code section 654 precludes punishing her both for pandering and for forcible oral copulation. Under that statute, "[a]n act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

"[Penal Code] Section 654 was enacted in 1872 and, insofar as here relevant, has never been amended. ■ The purpose of this legislative protection against punishment for more than one violation arising out of an 'act or omission' is to insure that a defendant's punishment will be commensurate with his culpability. [Citation.] 'Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an "act or omission," there can be no universal construction which directs the proper application of section 654 in every instance.' [Citations.] . . .

". . .[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.] . . .

"On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct. [Citations.]" (*People v. Perez, supra,* 23 Cal.3d at pp. 550-551, fns. omitted.)

■ The question is whether the offenses of pandering and forcible oral copulation in this case were incident to a single objective and therefore

*See footnote, *ante,* page 323.

constituted an indivisible transaction; that is, whether any of the offenses was committed as a means of committing any other, whether any facilitated the commission of any other, or whether any was incidental to the commission of any other. If so, appellant may be punished for only one offense. (*People* v. *Perez, supra,* 23 Cal.3d at pp. 553-554.)

Appellant asserts that the six convictions in this case were products of only two separate criminal transactions; in other words, that the various illegal sex acts which followed each of the two acts of pandering were incident to the single objective of involving the victim in prostitution. Because appellant's sole objective and intent was to make money by forcing her daughter to engage in acts of prostitution, the sex acts which followed from the pandering were indivisible from it, and under Penal Code section 654 cannot be separately punished.

Respondent urges that the pandering and the forcible oral copulation were entirely separate offenses; as it puts it in its responding brief, "the procurement [or pandering] was completed at the moment [S.] got in Moser's car." Appellant was found separately guilty on an aiding and abetting theory for the forcible oral copulation that took place in Moser's apartment. Respondent argues that she should be separately punished for the forcible oral copulation because S. was not "acting as a prostitute" in submitting to Moser, but was instead being forced against her will to engage in illegal sex acts.

It is necessarily part of the aim, objective and intent of a panderer that the person who is the object of the pandering become a prostitute. Whether or not the latter actually goes on to become a prostitute or to perform acts of prostitution, it is indisputable that the panderer specifically intends and hopes that the person will do so. Thus, as a general rule, any acts of prostitution that follow directly or proximately from the pandering are incident to a single objective and therefore constitute an indivisible transaction with it; that is, the subsequent sex offenses are incidental to the commission of the pandering, and are facilitated by it. Contrary to respondent's position, the pandering was not entirely separate from the subsequent sex acts. It was definitely incidental to appellant's objective in pandering her minor daughter that the latter would go on to have sex for money. After all, appellant was not paid as soon as S. got in the car with Moser; it was not until *after* the girl returned from Moser's apartment, where the sex acts were performed, that appellant received the money which it was her objective and intent to gain by forcing her daughter into prostitution.

Consequently, appellant may not be separately punished for the convictions on counts V and VII for nonforcible oral copulation and unlawful

sexual intercourse with a minor, since they were indivisible acts arising out of the second pandering on September 22, for which appellant was convicted under count IV.

On the other hand, the *forcible* oral copulations which occurred after the first pandering on or about September 2, and for which appellant was convicted as charged under counts II and III, were different in kind. While a panderer's specific intent may be to cause another to become a prostitute, the aim of forcing someone to submit to sex acts against their will is not an element of pandering and is not necessarily or generally intended by the panderer. Although acts of prostitution—sex for money—may be incidental to and indivisible from the specific objective of pandering, *forcible* sex acts are not.

█ Different criminal acts "may be divisible even though 'closely connected in time and a part of the same criminal venture.' " (*People* v. *Hopkins* (1975) 44 Cal.App.3d 669, 676 [119 Cal.Rptr. 61], quoting *Neal* v. *State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839].) The question is to be resolved upon the facts of each case. (*People* v. *Brown* (1958) 49 Cal.2d 577, 590-591 [320 P.2d 5]; *People* v. *Hopkins, supra,* 44 Cal.App.3d at p. 676.) The element of force or violence may, under the facts of a given case, render certain such criminal acts severable from the overall criminal transaction of which they are a part or during which they take place; such acts may, by virtue of their forcible or violent nature, constitute additional offenses for which additional or greater punishment may be given. (*People* v. *Hopkins, supra,* 44 Cal.App.3d at pp. 676-677; *People* v. *Davis* (1966) 241 Cal.App.2d 51, 56 [50 Cal.Rptr. 215].)

█ We conclude under the facts presented in this case that Penal Code section 654 does not preclude punishment for both pandering and forcible oral copulation, even though the acts were closely connected in time and a part of the overall criminal transaction. A defendant who attempts to gain money by aiding and abetting a number of base, forcible sex acts on his or her victim is substantially more culpable than a defendant who merely "causes, induces, persuades or encourages another person to become a prostitute." (Pen. Code, § 266i, subd. (b).) The act giving rise to the pandering was separate, distinct, and different in kind from the forcible sex acts, and was not incidental to or the means by which the forcible oral copulations were accomplished. (*People* v. *Perez, supra,* 23 Cal.3d at pp. 550-554; *In re McGrew* (1967) 66 Cal.2d 685 [58 Cal.Rptr. 561, 427 P.2d 161]; *People* v. *Hicks* (1965) 63 Cal.2d 764 [48 Cal.Rptr. 139, 408 P.2d 747]; *People* v. *Slobodion* (1948) 31 Cal.2d 555 [191 P.2d 1].) Thus, there was no error in punishing appellant for both the pandering charged in count I and the forcible oral copulations charged in counts II and III.

## VIII

Finally, appellant contends that the trial court committed sentencing error by relying on improper factors and by failing to state its reasons for its sentencing choices.

We have reviewed the record and conclude that the appellant is correct. The trial court stated that it had considered the sentencing memorandum of the district attorney and that it concurred in that memorandum. However, the court failed to state proper reasons for the record. As to count I, the court imposed the upper term without stating any circumstance in aggravation. In respect to counts IV, V and VII, no reasons were expressed by the court for imposing consecutive sentences, even though an individual basis was set forth in the district attorney's sentencing memorandum for each of these offenses. This is not sufficient; the factors on which a court relies in making a sentencing decision must be clearly stated on the record. The reasons cannot be incorporated by reference. (Cal. Rules of Court, rules 439(c), 443; *People v. Lock* (1981) 30 Cal.3d 454, 459 [179 Cal.Rptr. 56, 637 P.2d 292]; *People v. Salazar* (1980) 108 Cal.App.3d 992, 1000 [167 Cal.Rptr. 38]; *People v. Turner* (1978) 87 Cal.App.3d 244, 247 [150 Cal.Rptr. 807].) Additionally, in stating reasons for imposing upper terms for counts II and III and consecutive sentences for counts I, II and III, the court violated the rule against dual use of facts. (Cal. Rules of Court, rule 441(c) and (d); *People v. Lawson* (1980) 107 Cal.App.3d 748, 752-758 [165 Cal.Rptr. 764].)

## IX

The portion of the judgment sentencing the appellant is remanded for resentencing consistent with the views expressed herein.

In all other respects, the judgment is affirmed.

White, P. J., and Strankman, J., concurred.

A petition for a rehearing was denied February 10, 1989, and appellant's petition for review by the Supreme Court was denied April 5, 1989.