[No. F006002. Fifth Dist. Dec. 16, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD EUGENE HENDERSON, Defendant and Appellant.

COUNSEL

Jeff Reich, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEST, J.—Defendant, committed to Atascadero State Hospital as a mentally disordered sex offender (MDSO), appeals from an order denying his release on outpatient status. We affirm.

## Factual and Procedural Background

On October 3, 1977, defendant was convicted of voluntary manslaughter in violation of Penal Code section 192. The victim was the 10-year-old female foster child of defendant and his wife. On April 2, 1976, defendant drove the child to a remote area, had her perform oral copulation, and then beat her to death with a rock. Defendant had sexually molested the victim for several weeks prior to the fatal assault.

On November 29, 1977, defendant was committed to the Department of Health as an MDSO pursuant to former Welfare and Institutions Code[1] section 6300 et seq. Defendant's commitment was extended for two years on January 30, 1981, and for another two years on September 19, 1983, both pursuant to section 6316.2.

On August 13, 1984, in a letter report to the trial court, William Rossiter, a behavioral sciences consultant for the Los Angeles County Department of Mental Health, opined that defendant was not likely to be a danger to the health and safety of the community if transferred to a local inpatient treatment program. By the court's minute order of September 25, 1984, defendant was transferred to Clearview Sanitarium in Gardena for inpatient treatment.

On September 26, 1984, Gordon Gritter, M.D., acting clinical and medical director of Atascadero State Hospital, executed an affidavit recommending reextension of defendant's MDSO commitment. Dr. Gritter was of the opinion that the defendant qualified for a reextension of commitment under section 6316.2 in that in his then status and condition, he suffered from a mental disease, defect, or disorder, and as a result of such mental disease, defect, or disorder, was predisposed to the commission of sexual offenses to such a degree that he presented a substantial danger of bodily harm to others. The report of a team conference on defendant held on August 30, 1984, observed that defendant had been accepted for treatment in Los Angeles at Clearview Sanitarium for observation prior to full acceptance in the outpatient treatment program. This report was attached to Dr. Gritter's affidavit.

By letter dated March 26, 1985, Donald Lee, clinical district chief for the Los Angeles County Department of Mental Health, informed the court that his department felt it had prepared a plan which would meet defendant's needs for treatment and supervision and enclosed a proposed treatment agreement.

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise noted.

On January 15, 1985, the District Attorney of Madera County filed a petition pursuant to section 6316.2 to again extend defendant's commitment, alleging that defendant "suffers from either a mental disease, defect, or disorder, and as a result of such a mental disease, defect, or disorder, is predisposed to the commission of sexual offenses to such a degree that he presents a substantial danger of bodily harm to others . . . ."

Following a hearing at which the petition was found to be true pursuant to a stipulation of the parties, the trial court ordered defendant's commitment extended to April 20, 1987.

In a report to the trial court dated February 28, 1985, Dr. W. Al-Fadley, M.D., medical director of Clearview Sanitarium, recommended that defendant be placed on outpatient status.

Dr. Walter Hofmann, M.D., staff psychiatrist and designee of the Los Angeles County Director of Mental Health, in a report dated March 26, 1985, advised the court that he had evaluated defendant and, in his opinion, defendant "would not constitute a danger to the community, especially in view of his compliance with the conditions of the enclosed treatment agreement." Dr. Hofmann recommended that defendant "be approved for treatment in the community pursuant to section 1604 of the Penal Code." The Los Angeles County Department of Mental Health agreed to provide outpatient treatment services to defendant who would live in Los Angeles with his wife.

In a letter to the trial court dated May 2, 1985, Dr. Raymond Reedy, M.D., medical director of Mental Health Services of Madera County, reported that he had reviewed defendant's entire medical and court record and had interviewed both defendant and defendant's wife at the Clearview Sanitarium in Gardena and recommended that the court place defendant on outpatient status.

Following a hearing on May 16, 1985, the trial court denied approval of outpatient status for defendant.

### DISCUSSION

We first consider whether an order denying outpatient status to an MDSO is an appealable order. We have found no cases addressing this specific question. ■ However, in *Gross* v. *Superior Court* (1954) 42 Cal.2d 816, 820-821 [270 P.2d 1025], the court stated: "Sexual psychopathy proceedings are special proceedings of a civil nature which are collateral to the criminal case. [Citations.] In the absence of statutory provision denying

the right to appeal, an appeal may be taken by virtue of the general provisions of section 963 allowing appeals in special proceedings. . . . While there is no provision in the Welfare and Institutions Code for an appeal in sexual psychopath proceedings as there are for some of the other proceedings there authorized, we do not believe that is an indication that the general provisions on appeal (Code Civ. Proc., § 963) do not apply. It would thus appear that the original order of commitment as a sexual psychopath is appealable as a final judgment in a special proceeding and that subsequent orders made under [former] section 5519 [see now §§ 6325-6327] would be appealable as special orders after final judgment." (Fn. omitted.)

Since section 6325 makes reference to Penal Code section 1600 et seq., we hold under the authority of *Gross* v. *Superior Court* the order denying outpatient treatment is an appealable order.

Because of the crimes committed by defendant and his MDSO status, he falls within the auspices of Penal Code section 1600 et seq. Penal Code section 1603 provides in pertinent part: "(a) Any person subject to the provisions of subdivision (a) of Section 1601 *may* be placed on outpatient status if all of the following conditions are satisfied:

"(1) The director of the state hospital or other treatment facility to which the person has been committed advises the committing court that the defendant would no longer be a danger to the health and safety of others while on outpatient status, and will benefit from such status.

"(2) The community program director advises the court that the defendant will benefit from such status, and identifies an appropriate program of supervision and treatment.

". . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The community program director shall prepare and submit the evaluation and the treatment plan specified in paragraph (2) of subdivision (a) to the court within 30 calendar days after notification by the court to do so.

"(c) Any evaluations and recommendations pursuant to paragraphs (1) and (2) of subdivision (a) shall include review and consideration of complete, available information regarding the circumstances of the criminal offense and the person's prior criminal history." (Italics added.)

No reported cases have construed Penal Code section 1603; however, the statutory framework and the language used in Penal Code section 1603 suggest the court must exercise its discretion in evaluating a motion

for outpatient status, and we so hold. (See, e.g., *People* v. *Lock* (1981) 30 Cal.3d 454, 458 [179 Cal.Rptr. 56, 637 P.2d 292] [the court construed similar "may" language to require the trial court's exercise of discretion].)

■ The term judicial discretion implies the absence of arbitrary determination, capricious disposition, or whimsical thinking. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) "When the question on appeal is whether the trial court has abused its discretion, the showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion. An appellate tribunal is not authorized to substitute its judgment for that of the trial judge. [Citation.]" (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].) Discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. (*People* v. *Giminez, supra,* 14 Cal.3d at p. 72.)

In this case, defense counsel submitted the matter on the basis of the doctors' reports. Plaintiff below offered no additional facts at the proceeding. Before making its ruling, the court observed that in the request for a petition for reextension of commitment, Dr. Gritter had opined that defendant was an MDSO and a danger to the community. The district attorney also argued that defendant was still a danger to society due to the nature of the commitment offense.

After the trial court indicated that it was going to deny the motion, defense counsel properly urged the trial judge to state reasons for its denial in aid of meaningful appellate review.[2] (See *People* v. *Lock, supra,* 30 Cal.3d 454, 459.) The court's reasons for denying outpatient treatment were as follows: "One is that he is still and has been extended as such a mentally disordered sex offender and is a danger to society.

"It is further the Court's opinion that the outpatient program that has been outlined and submitted is insufficient to constitute an adequate protection to society. And that is basically a type of contract I take it, or assurance supposedly for the Court that he can in fact be supervised sufficiently on outpatient treatment to protect society against his dangers.

"I do not feel that program, that is the Court's opinion and judgment, that that program is not sufficient for that purpose. Therefore, the approval is denied."

---

[2]Because the trial court did in fact state reasons for denying the motion for outpatient status, the question of whether a trial court is required to state reasons when deciding whether or not to grant outpatient status is not before us.

Defendant appears to contend that since the objective of the MDSO statutory framework is treatment and not punishment, consideration of defendant's criminal offense was no longer relevant. It must first be noted that the trial court did not appear to consider this factor, but even if it did, no error appears. While the issue at this juncture is treatment and not punishment, the nature of the criminal offense is not solely relevant to punishment. The nature of the criminal offense may also have a bearing on the dangerousness of the defendant to the community. For example, the MDSO whose commitment offenses were child molesting and manslaughter, such as defendant's, potentially poses a greater risk of harm in society than a defendant whose commitment offense was merely a nonviolent child molestation.[3] Thus, even if the trial court in this case considered this factor, it was not error. Furthermore, the record does not support the notion that the court intended to punish defendant by denying outpatient treatment.

Defendant does not dispute that his dangerousness to society is a proper factor to consider in determining whether to permit outpatient status. Defendant acknowledges that Penal Code section 1603 requires an expert opinion that the individual in question "would no longer be a danger to the health and safety of others while on outpatient status, . . ."

 Defendant, however, points out that all of the doctors and clinicians agreed that outpatient status is appropriate. Nevertheless, the trial court has the ultimate responsibility of determining whether defendant should be placed on outpatient status. (Pen. Code, § 1603, subd. (a)(3).)

Because the trial court stated its reasons for denying outpatient status to defendant, our application of the "abuse of discretion" standard stated above is greatly simplified: (1) Did the trial court rely on proper factors, and (2) do these factors find some support in the record? The answers to both of these questions in this case are in the affirmative.

First of all, the applicable statutes establish, and defendant concedes, that dangerousness is a proper factor, indeed the paramount concern. Second, as already indicated, Dr. Gritter's report stated that defendant still presented a substantial danger of bodily harm to others. This appears to be sufficient evidence upon which the trial court could find the defendant still presents a substantial danger of bodily harm to others. Considering this potential for danger, the court found that the outpatient program submitted by the Los Angeles County Department of Health was inadequate to protect society.

---

[3]As amended effective September 30, 1985, Penal Code section 1604, subdivision (c), now specifically provides in pertinent part: "In any hearing conducted pursuant to this section, the court shall consider the circumstances and nature of the criminal offense leading to commitment and shall consider the person's prior criminal history."

We are unable to say, as a matter of law, that the program, which is attached as exhibit A, is adequate to protect society. Therefore, the trial court's decision to deny outpatient treatment does not reflect an arbitrary determination, capricious disposition or whimsical thinking, but instead appears to have been well within the bounds of reason, all of the circumstances being considered.

In the absence of a clear showing of abuse, the trial court's exercise of discretion will not be disturbed on appeal. (*People* v. *Giminez, supra,* 14 Cal.3d at p. 72.) No abuse of discretion appears here.

The order denying outpatient status to defendant is affirmed.

Woolpert, Acting P. J., and Martin, J., concurred.

EXHIBIT A

**TREATMENT AGREEMENT**
**LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH**
**JUDICIALLY COMMITTED PERSONS PROGRAM**

I, ROGER SCHOCE, M.D., DEPUTY DIRECTOR LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH, HEREBY AGREE TO PROVIDE TREATMENT SERVICES PURSUANT TO SECTION __1604__ FOR HENDERSON, Donald E. CT. # SC 24404 , HOSPITAL #ASH 02 92 20 WHO REQUIRES ONGOING THERA-PEUTIC TREATMENT AND SUPERVISION IN THE FOLLOWING AREAS:

1. Sexual conflicts
2. Control and violence issues
3. Anger management
4. Impulsive behavior
5. Appropriate vocational program
6. Drug and alcohol abuse

SUGGESTED TREATMENT MODALITIES AND/OR OTHER CONDITIONS CONSIST OF THE FOLLOWING:

1. Individual therapy
2. Group therapy
3. Family and conjoint therapy
4. Antabuse medication as prescribed
.5. Attendance at Alcoholics Anonymous
6. Medication monitoring
7. Testing for alcohol and/or substance abuse

PLACE OF RESIDENCE WILL BE: (with his wife, Marie Henderson) 3866 W. 8th St., LA 90005*

THE TREATMENT PROVIDER WILL BE: Forensic Community Treatment Program
2701 Beverly Blvd., LA 90057

PERSON IN CHARGE OF THE FACILITY IS: Dieter Poiser, Ph.D. PHONE: 738-3227

THE APPLICANT FOR COMMUNITY TREATMENT WHO SIGNS BELOW MUST AGREE TO COOPERATE WITH ALL TREATMENT ACTIVITIES AND CONDITIONS AS INDICATED BY HIS MHP ASSIGNED THERAPIST:

ROGER SCHOCE, M.D., LOS ANGELES COUNTY MENTAL HEALTH DIRECTOR'S DESIGNEE

BY _____ DATE 4·1·85
MENTAL HEALTH CLINICAL DISTRICT CHIEF
JUDICIALLY COMMITTED PERSONS PROGRAM

I HAVE READ THE GENERAL PROGRAM POLICY STATEMENT (SEE REVERSE) AND THE ABOVE AGREEMENT FOR TREAT-MENT. I AGREE TO PHONE THE PERSON IN CHARGE OF THE FACILITY WITHIN ONE WORKING DAY OF RELEASE FROM COURT OR FROM STATE HOSPITAL AND TO ACTIVELY PARTICIPATE IN THE TREATMENT PLAN TO BE WORKED OUT BETWEEN MYSELF AND MY ASSIGNED THERAPIST. I AGREE TO TAKE MEDICATIONS PRESCRIBED FOR ME BY THE PHYSICIAN EITHER BY MOUTH OR BY INJECTION. I AGREE TO HAVE BLOOD OR URINE SAMPLES TAKEN FOR RANDOM LABORATORY TESTS. I UNDERSTAND THAT THE INITIAL TREATMENT PLAN MAY BE MODIFIED BY MY THERAPIST IN CONSULTATION WITH ME AT SOME LATER DATE. I AGREE NOT TO KEEP FIREARMS, NOT TO USE ILLICIT DRUGS, NOR VIOLATE OTHER LAWS. I UNDERSTAND THAT I MAY BE HOSPITALIZED IF I FAIL TO COOPERATE WITH THESE STIPULATIONS. I FURTHER UNDERSTAND THAT ANY ACTION ON MY PART WHICH CONSTI-TUTES A DISCONTINUANCE OF THE OUTPATIENT TREATMENT PROGRAM AS PRESCRIBED BY THE COUNTY DEPARTMENT OF MENTAL HEALTH COULD LEAD TO A REVOCATION HEARING RESULTING IN MY APPREHENSION AND RETURN TO THE STATE HOSPITAL OR OTHER FACILITY DESIGNATED BY THE COUNTY. I UNDERSTAND THAT I MAY BE REQUIRED TO PAY FOR PART OF MY TREATMENT, AS WELL AS FOR MY BOARD AND CARE HOME PLACEMENT, ACCORDING TO MY ABILITY TO PAY. I AGREE TO NOTIFY MY OUTPATIENT SUPERVISOR WHENEVER I CHANGE MY ADDRESS OR IF I AM QUESTIONED BY THE POLICE OR ARRESTED.

_____ _____
APPLICANT FOR COMMUNITY CARE DATE

EVALUATED BY: _____
Walter D. Hofmann, M.D.

*temporary local phone contact via his daughter: (714) 781-4709

REMAINING PERIOD OF POSSIBLE TIME IN CONTINGENCY: _____

JCPP-018
REVISED DATE: 8-10-84

9TLieJ

**LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH**
**JUDICIALLY COMMITTED PERSONS PROGRAM**

**General Program Policies**

1. The County Mental Health Director's Designee, Roger Schock, M.D., agrees to provide you with community treatment and supervision, should the Court approve the treatment plan. The length of your community treatment may be as long as one year before the Court is legally·required to review your case, and extend your commitment to Outpatient Treatment, should this be our recommendation.

2. We want to establish as open a relationship with you as possible, but we also have a duty to protect you and other people. If we learn of your behaving in a way that could be dangerous, (for example, committing or threatening to commit an offense, excessive use of alcohol or drugs we will work with you and use our judgment in taking those steps called for by the amount of danger present. For example, we can increase therapy time, make home visits, advise temporary emergency hospitalization in Los Angeles or, at the extreme, recommend placement in a State Hospital.

3. Your assigned treatment supervisor will see you regularly in treatment, make referals to other services you may need, and help you in emergencies when contacted.

4. Your treatment supervisor will report to the Court on your progress every three months. You will be notified in advance, whenever possible, of any actions he/she plans to take in your case.

5. Your treatment supervisor will report to anyone else you may choose; otherwise, all material in your file will be kept confidential.

6. Your treatment supervisor will report your attendance at treatment to the County Mental Health officials. Failure to attend may lead to a recommendation for hospitalization.

7. ·On the reverse side is your Treatment Agreement showing your beginning treatment program. Your treatment supervisor, together with you, will make up a more detailed treatment plan indicating your problem areas and goals to be reached. This plan may be changed or updated from time to time. It may also be necessary for you to transfer to another community treatment program if the situation warrants.

8. You may be asked to participate as a patient/member in staff discursions about general treatment policies and program planning. You may also be asked to help other patients as a treatment assistant.

9. Any overnight travel Out-Of-County must have prior approval of your assigned therapist.

DTL:cj

JCPP-018
Revised 5-11-84