Filed 5/15/26  P. v. Cannon CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ROBERT CANNON,<br><br>　　　Defendant and Appellant. | A173527<br><br>(Contra Costa Super. Ct.<br>Nos. 022400620, 022400979) |

A trial court found Robert Cannon incompetent to stand trial and ordered him committed to a Regional Center of the East Bay (Regional Center) residential facility for competency restoration services.  (Pen. Code, §§ 1368, 1370.1; undesignated statutory references are to this code.)  Cannon appeals, arguing the court abused its discretion by ordering him committed to a residential facility.  We affirm.

## BACKGROUND

In September 2023, Cannon's 12-year-old brother (younger brother) was suspended from school for fighting with a classmate.  Later that day, Cannon, his mother, grandmother, and middle brother confronted the classmate at the school.  As the boy exited the school gates, Cannon and his middle brother grabbed him and threw him to the ground.  Cannon held him down and encouraged his younger brother — also present — to kick him.  Cannon punched the boy in the head while his mother and grandmother

1

watched; his mother acknowledged not intervening and instead encouraging younger brother to " 'whoop' " him. The child sustained scalp and ear contusions, neck muscle strain, and purple and red bruising by his ear.

In April 2024, a repairman arrived at Cannon's home to complete a maintenance project he believed the property owner authorized. After he finished, a dispute ensued with Cannon's mother, who refused to pay for the repairs. She asked the man to leave, brandishing a taser. After he returned to his truck, Cannon and two others, including Cannon's sister, began throwing rocks at it. They kicked the truck doors and shattered the windshield, resulting in lacerations to the man's head, eyebrow, and forearm.

The Contra Costa County District Attorney charged Cannon with misdemeanors, child endangerment (§ 273a, subd. (b)) and battery on school property (§ 243.2, subd. (a)). In a separate complaint, he was also charged with assault with a deadly weapon causing great bodily injury (§§ 245, subd. (a), 12022.7, subd. (a)), and vandalism resulting in over $400 in damage (§ 594, subd. (a)).

Doubts were expressed regarding Cannon's competency, and the trial court ordered evaluations. During one evaluation, Cannon exhibited poor frustration tolerance and yelled when he could not understand questions or concepts. He refused to answer questions, and one evaluator was unable to complete the interview. The court subsequently found Cannon not competent to stand trial and suspended criminal proceedings in both cases. It referred the matter to the Regional Center and conditional release program (CONREP) for a competency restoration placement recommendation.[1]

---

[1] The trial court also requested the probation department, prosecution, and the Regional Center to assess whether Cannon qualified for diversion. (*Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 707 [courts can "divert eligible persons charged with qualifying offense from the normal criminal

The Regional Center's report found Cannon eligible for its services based on his diagnosis of an unspecified neurological disorder — a developmental disability. It recommended placement in a Level 6 residential facility with 24-hour staff support and supervision. A board-certified behavior analyst would create a plan tailored to Cannon's needs. The Regional Center also recommended he receive competency training, anger management training, and that he participate in programs for developing social-emotional skills, emotional regulation, creating and maintaining reinforcement schedules, as well as traditional therapy.

CONREP's assessment referred Cannon to the Regional Center for competency restoration based on his developmental disability. It opined that his reported unwillingness to comply with the terms and conditions of outpatient care, combined with his demonstrated need for comprehensive learning supports and services rendered him unsuitable for outpatient treatment.

At a hearing, Cannon's counsel objected to placement in a residential facility because the services recommended for regaining competency were available on an outpatient basis. Several factors, counsel argued, supported his remaining at home — he had limited mobility from a leg surgery and experienced ongoing trauma and pain flowing from past gunshot wounds. When not around his family, who were reportedly willing to support and advocate for him, Cannon struggled with his behavior. Counsel conveyed Cannon's agreement to comply with outpatient services and detention rules,

process into treatment and rehabilitation"].) In a separate report, the Regional Center opined that Cannon would benefit from services available through a diversion plan but recommended he reside at an adult residential facility. Probation similarly recommended Cannon receive diversion with dual agency supervision.

as well as his willingness to wear an ankle monitor. He had been receiving mental health treatment and complying with medication for an extended period without any incidents. A representative from the Regional Center noted that Cannon could demonstrate good behavior when he feels safe and trusts the individuals interacting with him. He also indicated Cannon's family resided close to the residential facility, potentially easing his transition to that facility.

The prosecution urged the trial court to place Cannon in a residential facility. The serious nature of Cannon's offenses — acting in concert with family members to attack a young student and a repairman who was retreating from a dispute — the prosecution argued, militated against outpatient treatment. It further noted there was extra security in the courtroom due to Cannon's prior outbursts during proceedings.

The trial court committed Cannon to the Regional Center residential facility for restoration of competency based on the charges and facts of the cases.[2] It noted his resistance to the proceedings on several occasions, raising concerns about his amenability to outpatient status. It explained the alleged assaults resulted in serious injuries. Although Cannon had never received Regional Center services, the issue before the court was the nature of services that could be provided to him prospectively. The residential facility, the court found, would provide the high level of services that Cannon required.

## DISCUSSION

Cannon contends the trial court abused its discretion by committing him to a Regional Center residential facility. He contends there was insufficient evidence to support its finding that he could only receive

---

[2] The trial court deferred a decision on whether to grant Cannon's diversion petition.

adequate services in that setting. After reviewing the court's decision for an abuse of discretion — broadly deferring to the court and reversing only if its ruling exceeded the "bounds of reason, all of the circumstances being considered" — we disagree. (*People v. Henderson* (1986) 187 Cal.App.3d 1263, 1268 [abuse of discretion standard of review for evaluating request for outpatient status].)

Defendants are mentally incompetent to stand trial if, as a result of a mental disorder or developmental disability, they are unable to understand the nature of criminal proceedings or to assist defense counsel in a rational manner. (§ 1367, subd. (a).) The prosecution is suspended upon an order requiring a determination regarding competence. (§ 1368, subd. (c).) Once the court determines the defendant is mentally incompetent due to a developmental disability, it further suspends proceedings and commits the defendant to a state hospital, developmental center, or other residential facility to help attain competence. (§ 1370.1, subd. (a)(1)(B).) CONREP — in cases of mental illness — or the regional center — in cases of developmental disability — must file a placement recommendation report with an individualized plan to expeditiously restore competency. (§§ 1370, subd. (a)(1)(C), 1370.1, subd. (a)(1)(B).) Courts must consider the regional center's recommendation. (§ 1370.1, subd. (a)(1)(B)(i).)

Defendants with developmental disabilities may undergo outpatient treatment if the regional center director opines that they are not a danger to others and will benefit from such treatment, the residential facility head agrees, and the defendants agree to receive and submit to outpatient treatment. (§ 1370.4.) While defendants who have committed certain serious or violent felonies involving great bodily injury — like Cannon — must serve 180 days in residential treatment before receiving outpatient status, courts

have the discretion to order outpatient status if there is "a suitable placement . . . that would provide the person with more appropriate mental health treatment and the court finds that the placement would not pose a danger to the health or safety of others." (§§ 1601, subd. (a), 1600.)

Substantial evidence supports the factual findings made by the trial court in deciding to place Cannon in a residential facility. (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 [abuse of discretion where court bases decision on findings not supported by substantial evidence].) Characteristics of Cannon's charged offenses, which resulted in serious injuries, indicated his dangerousness to the community. (Cf. *People v. Henderson, supra,* 187 Cal.App.3d at pp. 1264, 1269 [addressing an appeal from order denying defendant's release from a mental health facility to outpatient status].) In one offense, Cannon allegedly held a child down and encouraged his younger brother to repeatedly kick him. Cannon allegedly also punched the child, resulting in contusions to his head. In Cannon's felony complaint, he threw rocks at the victim's truck, resulting in broken windows and glass lacerating the victim's head and arm. Over a year later, the victim allegedly still suffers from nerve damage.

Cannon's resistance to the competency and placement evaluation process further supports the trial court's finding regarding his dangerousness and questionable amenability to outpatient treatment. His aggression towards others as result of his mood disorder manifested during court-ordered evaluations and proceedings. He had outbursts despite being in a controlled environment that required additional security. In his initial competency evaluation, Cannon exhibited poor frustration tolerance, often yelling when he lacked knowledge of certain concepts. His impatience with the evaluation procedures resulted in his refusal to answer questions and the

6

evaluator's inability to complete the interview. CONREP also opined that Cannon was unsuitable for outpatient treatment based on his reported unwillingness to comply with terms and conditions of outpatient care and his demonstrated need for comprehensive learning supports and services. Though Cannon's counsel later emphasized Cannon's willingness to comply with outpatient treatment, we accept the court's "resolution of conflicting evidence" rather than inserting our own credibility assessments. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008.)

Both the Regional Center and CONREP recommended Cannon live in a residential facility, which would provide him supervision and access to therapeutic interventions necessary to ensure restoration of competency. (§ 1370.1, subd. (a)(1)(B)(i).) Though his counsel argued Cannon's family was supportive and could appropriately provide a high level of supervision while receiving outpatient services, the record demonstrates otherwise. (§§ 1601, subd. (a), 1600.) His mother escalated, rather than intervened, when Cannon allegedly attacked the victims in both charged offenses. In his felony case, his mother sparked a taser in the air to scare the repairman and then sparked the taser two inches from his ribs for approximately 10 seconds, even though he was attempting to enter his truck. She continued to do so while Cannon threw rocks at the windshield. In the misdemeanor case, his mother admitted she did not intervene while Cannon was attacking the child, even though she was recorded in video footage five feet away, watching the entire time. More concerning, his mother allegedly encouraged his younger brother to attack the child, yelling " 'whoop' " him, and " 'Kick him, kick his ass.' " Despite video footage documenting Cannon's involvement, his mother and grandmother insisted he was at home during the attack. Drawing all inferences in favor of the trial court's order, it could have reasonably

7

concluded Cannon posed a danger to others while on an outpatient status based on this home environment and lax supervision. (*People v. Johnson* (2020) 55 Cal.App.5th 96, 107.)

Resisting this conclusion, Cannon argues the record lacks evidence that only a residential facility could provide him with adequate services and supervision. He insists section 1370.4 mandates the Regional Center report to include an evaluation of an outpatient option. And relying on sections 1370.1 and 1370.4, he contends the trial court was required to consider the Regional Center's opinion concerning the propriety of outpatient status in its placement recommendation but failed to do so. We do not consider this argument because Cannon failed to raise it below, thus forfeiting it on appeal. (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1101 [" ' "forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error" ' "].)

Even if this argument were not forfeited, it ignores the plain language of the statute. A court "may order the defendant to undergo outpatient" "*[i]f*, in the evaluation ordered by the court . . . the regional center director, or a designee, is of the opinion that the defendant is not a danger to the health and safety of others while on outpatient treatment and will benefit from such treatment." (§ 1370.4, italics added.) The use of the word "[i]f" demonstrates the Legislature intended to allow a regional center to determine whether to include that assessment. (*An Independent Home Support Service, Inc. v. Superior Court* (2006) 145 Cal.App.4th 1418, 1439.) Nothing in the statute *requires* the regional center to make such an assessment.

More importantly, Cannon ignores the first element to qualify for outpatient treatment — there must be a regional center opinion that he is not

8

a danger to others. (§ 1370.4.) Here, there was none. To the extent Cannon focuses on statements made by the Regional Center's representative during the hearing — suggesting he could benefit from regional services even on an outpatient basis — he impermissibly asks us to reweigh the evidence. (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1250 [when reviewing a decision for an abuse of discretion, we " 'do not reweigh the evidence or substitute our notions of fairness for the trial court's' "].) Indeed, it "is not sufficient to show facts affording an opportunity for a difference of opinion" to demonstrate the trial court abused its discretion. (*People v. Cross* (2005) 127 Cal.App.4th 63, 73.) Viewing the record in the light most favorable to the order, the trial court's determination placing Cannon in a residential facility is supported by substantial evidence and did not exceed the bounds of reason. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1008; *People v. Henderson*, *supra*, 187 Cal.App.3d at p. 1268.)

## DISPOSITION

The order is affirmed.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
FUJISAKI, Acting P. J.


_____
PETROU, J.

A173527; *People v. Cannon*